OPINION
{¶ 1} The Fraternal Order of Police, Montgomery County Lodge No. 104 appeals from the judgment of the Montgomery County Common Pleas Court which vacated an arbitration award previously rendered in its favor.
 {¶ 2} The grievance in the case before Arbitrator Tobie Braverman was filed by FOP 104 President Deputy David Concannon on September 11, 2002. At the time the grievance was filed, Concannon was a Patrol Officer in Washington Township with regular work hours from 6:00 p.m. until 4:00 a.m. The grievant has also served as the FOP's President since January 1, 2002.
 {¶ 3} On August 21, 2002, the FOP and the Montgomery County Sheriff's Department held a regular monthly labor management meeting. Sheriff David Vore's attendance at the meeting was unusual. Sheriff Vore indicated that his purpose in attending the meeting was to request the Lodge consider an agreement whereby deputies, assigned to specialized assignments, would be required to agree to a specific time commitment which had the effect of prohibiting a deputy from bidding out of the specialized assignment for a certain time period. In this August labor management meeting, Sheriff Vore indicated that he was anxious to begin discussion with the Lodge officials on this matter as soon as possible. Deputy Concannon stated that he wanted an opportunity to examine the Contract and agreed to arrange a meeting where the appropriate representatives from each side could be present. The meeting was scheduled for 9:30 a.m. on August 30, 2002.
 {¶ 4} On August 27, 2002, Deputy Concannon submitted a request to his supervisor for time off with pay for the purpose of attending the meeting. This request was submitted pursuant to Article 4, Union Business, Section 1(B), which provides:
 {¶ 5} "The President, Vice President or their designee will be released from their normal duty hours upon reasonable request to participate in meetings and discussions with regard to the aforementioned areas without loss of pay or benefits. The President or Vice President or their designee will not receive overtime pay to conduct the aforementioned Union business or to process grievances."
 {¶ 6} Subparagraph A of Article 4, Section 1, the same article and section, specifies that attendance at bargaining sessions is one authorized function of the President or Vice President for which they may be released from their normal duty hours.
 {¶ 7} Deputy Concannon requested to be relieved from duty on August 29, 2002 from 11:00 p.m. through 4:00 a.m. President Deputy Concannon requested to use five (5) hours of union business leave so that he would not have to work until 4:00 a.m., report for a scheduled meeting at 9:30 a.m. and then report back to work at 6:00 p.m. the evening of August 30, 2002. Concannon testified that he was concerned that he have an opportunity to be rested prior to the 9:30 a.m. meeting both in order to be prepared to participate in the meeting and to be adequately rested for his 6:00 p.m. report for duty time in the event the meeting lasted into the afternoon on August 30.
 {¶ 8} The Sheriff's Department denied the request to use union leave, conveying the denial to Concannon on August 30 at 6:00 p.m. which was after the time requested. Concannon had to use his own personal accrued time in order to leave his post at 11:00 p.m. on August 29.
 {¶ 9} Deputy Concannon testified without contradiction that this incident was an isolated incident as the past union presidents have been assigned to shifts which coincide with regular business hours and the Sheriff's Office has historically been fair in allowing the President and/or the Vice President of the Lodge to attend authorized functions without loss of pay or benefits. Deputy Concannon also testified that in order to accommodate both his duty schedule and the Sheriff's schedule, the parties have strived to schedule meetings late in the afternoon, immediately prior to Deputy Concannon's reporting time of 6:00 p.m. In this situation, however, because parties outside of the Sheriff's Department were involved in the meeting, and because the Sheriff wanted the discussions to begin as soon as possible, the meeting was scheduled for 9:30 a.m.
 {¶ 10} Because of the denial, Deputy Concannon filed a grievance alleging the contract had been violated when the Sheriff refused to allow him to use union business leave in order to attend the meeting but rather required him to use personal leave.
 {¶ 11} The grievance was submitted to Arbitrator Braverman on May 12, 2003. In sustaining the grievance, Arbitrator Braverman found:
 {¶ 12} "It is clear on the face of the contractual language that the meeting for which the Grievant requested time off was one which qualified for paid release time pursuant to the terms of the Article 4. The crux of the matter presented here is whether sleeping in preparation for a meeting due to the morning scheduling of the meeting for a president who works nights is an appropriate use of union release time. The language of the section on its face appears to be broad enough to include this activity. The language provides for release from normal duty hours `to participate in meetings and discussions.' That language is sufficiently broad to permit time off for preparations which may be necessary to the meeting. If the parties had intended that the language apply only to meetings scheduled during the union officer's working hours, they could have specifically so stated."
 {¶ 13} Braverman concluded:
 {¶ 14} "Given the contractual language itself, which provides for release time to participate in meetings, together with the particular facts of this case, the Union has met its burden of proof to demonstrate a contractual violation."
 {¶ 15} The arbitrator determined that Concannon would be credited with five hours of personal leave for the 2002 year.
 {¶ 16} The Sheriff moved to vacate the arbitrator award pursuant to Revised Code Chapter 2711 alleging that the arbitrator had exceeded her powers and had departed from the essence of the parties' collective bargaining agreement. In sustaining the
 {¶ 17} Sheriff's motion the trial court noted the following:
 {¶ 18} "The Court agrees. No rational basis exists to support the Arbitrator's finding that the Agreement language `to participate in meetings and discussions' is `broad enough' to encompass `time off for preparations which may be necessary to the meeting.' The parties negotiated and agreed to the language used in Article 4 of the Agreement. The Arbitrator did not find the phrase `to participate in meetings and discussions' to be unclear or ambiguous. Nonetheless, she found the phrase to be `broad enough' to include not only the act of participating in meetings or discussion, but additionally, the act of making preparations necessary for the meetings. The deficiency in this link is apparent: it inserts a meaning that the express language does not rationally permit. Participation cannot be rationally `broadened' to include preparations to participate as by definition, preparations are distinct actions taken prior to another action (here participation). Therefore, the Court must find that Arbitrator's Award was reached only after she added language to Article 4 to confer a right that did not exist under the collective bargaining agreement.
 {¶ 19} "Yet more troubling to this Court is the fact that the Arbitrator's departure from the language of Article 4 was clearly result-driven. In the Opinion and Award, the Arbitrator essentially admits such when she states that `[i]t must be stressed, that the interpretation here is compelled in large part by the rather unique facts presented here. That is, the Grievant works nights and felt compelled to agree to the scheduling of a morning meeting on a scheduled work day due to the dictates of others' work schedules.' Opinion and Award, at 9-10. The fact that the parties to a contract may not have contemplated all possible applications of contract provision does not in itself make that provision ambiguous. Here, the language of Article 4 was clear and unambiguous: union release time was available to Deputy Concannon `to participate in meetings and discussions.' This meaning of this phrase, particularly the word `participate,' is not altered because Deputy Concannon's work schedule is perceived by the Arbitrator as unique. Yet the Arbitrator expressly stated in her Opinion and Award that this work schedule `compelled' her interpretation of Article 4. As such, the Court finds that in addition to lacking a rational basis in collective bargaining agreement, the Arbitrator's Award was arbitrary and capricious.
 {¶ 20} "For these reasons, the Court finds the Sheriff's Motion to Vacate the Arbitrator's Award well taken. As such, pursuant to R.C. 2117.10(D), the Court hereby VACATES the Arbitrator's Award and directs a rehearing in this matter in accordance with the provisions of the Agreement."
 {¶ 21} In two related assignments of error, appellant contends the trial court erred in finding the arbitrator's award lacked a rational basis in the collective bargaining agreement and also erred in finding that the arbitrator's award was arbitrary and capricious.
 {¶ 22} R.C. 2711.02(D) provides that the court of common pleas shall make an order vacating an award upon the application of any party to the arbitration if the arbitrators "exceeded their powers." (Emphasis added).
 {¶ 23} An arbitrator does not exceed her powers when the award "draws its essence" from the collective bargaining agreement. Queen City Lodge No. 69, F.O.P., Hamilton County,Ohio, Inc. v. Cincinnati (1992), 63 Ohio St.3d 43. An arbitrator's award "draws its essence" from the agreement, "where there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful."Findlay City School Dist. Bd. Ed. v. Findlay Educ. Assn.
(1990), 49 Ohio St.3d 129, 132. Therefore if there is a rational nexus between the Contract and the Arbitrator's Award and the Award is not "arbitrary, capricious or unlawful," the Arbitrator did not exceed her authority and the Award cannot be vacated pursuant to ORC 2711.10(D). Only when the arbitrator's award conflicts with the express terms of the agreement or is without rational support, or cannot be rationally derived from the terms of the agreement can it be said to depart from the essence of the contract. Ohio Office of Collective Bargaining v. Ohio CivilService Employees Ass'n., Local 11 AFSCME, AFL-CIO (1991),59 Ohio St.3d 177, 183.
 {¶ 24} When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court governs the rights of the parties' thereto. Hillsboro v. Fraternal Order of Police, OhioLabor Council, Inc. (1990), 52 Ohio St.3d 174. The arbitrator found that the language of the parties' agreement "release from normal duty hours to participate in meetings and discussions" was broad enough to allow a night shift deputy sheriff a release from his night duty hours so that he might effectively participate in an early morning bargaining session with the County Sheriff. We do not find the arbitrator's interpretation of the agreement to be irrational or arbitrary as a matter of law and thus the trial court erred in vacating the arbitrator's award. The appellant's assignments of error are sustained.
 {¶ 25} The judgment of the trial court is Reversed.
Fain P.J., and Grady, J. concur.