**The CITY OF PIQUA, Appellee,**

**v.**

**FRATERNAL ORDER OF POLICE, OHIO LABOR COUNCIL, INC., Appellant.**

[Cite as *Piqua v. Fraternal Order of Police,* 185 Ohio App.3d 496, 2009-Ohio-6591.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 09–CA–19.

Decided Dec. 11, 2009.

</div>

500

Stacy M. Wall, Piqua Law Director, for appellee.

Douglas J. Behringer and Paul L. Cox, for appellant.

Downes Fishel Hass Kim, L.L.P., and Jonathan J. Downes, urging affirmance for amici curiae, Ohio Public Employer Labor Relations Association, County Commissioners Association of Ohio, OMLA, the city of Lima, Ohio Association of Chiefs of Police, Ohio Municipal League, and the city of Dayton.

BROGAN, Judge.

{¶ 1} This case is before us on the Fraternal Order of Police's ("the union") appeal of the trial court's decision to vacate an arbitrator's award ordering the city of Piqua's police department to reinstate Officer Brett Marrs. The union contends that the arbitrator did not exceed his power by using the clear-and-convincing standard of evidence to find that the department failed to prove that it had cause to discharge Marrs. The union also contends that the award does not violate Ohio public policy. Finally, the union contends that Marrs is entitled to statutory prejudgment interest on the award. We will reverse the trial court's decision to vacate the arbitrator's award. However, because the trial court did not address the issue, we decline to consider whether Marrs is entitled to prejudgment interest.

I

{¶ 2} It was dark on the night of May 4, 2008, when Officer Brett Marrs, out on patrol, came to a four-way intersection and stopped. As he began to drive through the intersection, a bicycle struck the front side of the cruiser, or the cruiser struck a bicyclist; the fact is contested. The department, Marrs's employer, believed that Marrs had hit the bicyclist, and it cited him for violating a traffic ordinance that prohibits "improper starting." The department also concluded that Marrs had violated two departmental standards of conduct— Standard of Conduct 06 (committing unsafe acts or endangering themselves or others) and Standard of Conduct 12 (directing employees to display competent performance and achieve competent performance results). Based on these violations, ten days later, May 14, the department discharged Marrs.

{¶ 3} While the accident was a necessary cause of the department's decision to discharge Marrs, it was not the sole cause. Marrs had already been disciplined three times in the past two years. He had received a written reprimand for backing into another cruiser, causing damage; a one-day suspension for excessive personal use of the department's cellular phone while on duty; and a written reprimand for being late to duty assignments. The accident, then, was the straw that broke the camel's back, convincing the department that Marrs did not have the good judgment needed to be an effective police officer.

{¶ 4} The labor relationship between police officers and the department is governed by a collective bargaining agreement. Under this agreement, there is a three-step grievance-resolution procedure. The union, on behalf of Marrs, initiated this procedure. While the parties were trying to resolve the grievance, on August 8, 2008, Marrs was tried at a bench trial in municipal court on the "improper start" citation. Both Marrs and the bicyclist testified. Finding the evidence insufficient to prove that he violated the traffic ordinance, the court found Marrs not guilty. Unable to otherwise resolve Marrs's grievance, on September 26, 2008, the parties proceeded to the third and final step of the grievance-resolution procedure: arbitration.

{¶ 5} In his written decision, the arbitrator noted that the agreement permits the department to discharge or discipline officers only for "just cause," which is not defined in the agreement. The arbitrator said that "just cause" required the department to prove by clear and convincing evidence that Marrs had committed the wrongdoing that provided the grounds on which the department decided to discharge him. The arbitrator concluded that the department had failed to prove that Marrs was in any way at fault for the accident. The evidence shows, said the arbitrator, that as Marrs proceeded through the intersection, a bicycle hit the cruiser; the rider, having failed to stop at the intersection, had jumped off moments before. The arbitrator noted that the officer who first arrived on the

scene and investigated the incident concluded that Marrs had not violated any standard, policy, rule, regulation, statute, ordinance, or law indicative of misconduct. It was later, when those "higher up" reviewed the incident, that Marrs was charged with the traffic-ordinance violation. The arbitrator also cited several times the municipal court's acquittal. Based on the totality of the evidence presented, concluded the arbitrator, the department failed to meet its burden of proving by clear and convincing evidence that Marrs had committed the misconduct that formed the basis of the disciplinary action. Therefore, the arbitrator ordered the department to reinstate Marrs to his former position.

{¶ 6} The department appealed the arbitrator's award to the Miami County Court of Common Pleas, contending that the arbitrator exceeded his powers and asking the trial court to vacate the award. The department argued that the arbitrator should not have used a heightened standard of proof. It also contended that the award violated Ohio public policy. The trial court agreed with both contentions, concluding that the arbitrator erred when he determined that the department had no "just cause" to discipline Marrs. As a matter of law, said the court, the arbitrator should have used a "preponderance of the evidence" standard because that is the standard called for by the agreement. Also, the court concluded, reinstating as a police officer someone with Marrs's checkered history violates Ohio public policy. "Therefore," said the court, "the Court remands this matter to arbitration, consistent with and constrained by, the mandates set forth herein, to (1) determine sufficient and appropriate discipline in view of the prior disciplinary violations and the violations of the two standards of conduct cited herein (2) in a manner and amount that does not undermine or diminish the City's 'right to direct, manage and control the affairs' of the City (3) with proof by a preponderance of the facts and evidence."

{¶ 7} The union's appeal from this order is now before us.

## II

{¶ 8} The union's first four assignments of error concern whether the trial court correctly concluded that the arbitrator exceeded his powers, and we will consider them together. The fifth assignment of error concerns whether the trial court correctly concluded that the arbitrator's award violates Ohio public policy. And the sixth (and final) assignment of error concerns whether Marrs is entitled to prejudgment interest on the arbitrator's award.

## A

{¶ 9} These are the first four assignments of error:

{¶ 10} "The trial court erred to the prejudice of appellant when it determined that the arbitrator exceeded his power."

{¶ 11} "The trial court erred to the prejudice of the appellant when it determined that the arbitrator imperfectly performed his duties so that the arbitration decision was both arbitrary and contrary to law."

{¶ 12} "The trial court erred to the prejudice of the appellant when it substituted its interpretation of the collective bargaining agreement for the interpretation made by the arbitrator."

{¶ 13} "The trial court erred to the prejudice of the appellant when it misapplied the test for overturning an arbitrator's award pursuant to O.R.C. 2711.10."

{¶ 14} The union's essential contention in the first four assignments of error is that the arbitrator did not exceed his authority by ordering the department to reinstate Marrs. We agree.

{¶ 15} We will limit, as we must, the scope of our review to the trial court's decision to vacate. See *Dayton v. Fraternal Order of Police* (1991), 76 Ohio App.3d 591, 597, 602 N.E.2d 743 (review "is confined to an evaluation of the order issued by the court of common pleas pursuant to R.C. 2711.10"). And we will review the decision de novo. See *Dayton v. Internatl. Assn. of Firefighters, Local No. 136,* Montgomery App. No. 21681, 2007-Ohio-1337, 2007 WL 866999, at ¶ 11. Upon review, we conclude that the trial court erred as a matter of law by exceeding the permissible scope of its review and vacating the arbitrator's award.

### Judicial review of arbitration awards

{¶ 16} Judicial review of arbitration awards is limited in order to encourage parties to resolve their disputes with arbitration. *Dayton,* 2007-Ohio-1337, 2007 WL 866999, at ¶ 9, citing *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 27, 623 N.E.2d 39. This has long been public policy in Ohio. See *Springfield v. Walker* (1885), 42 Ohio St. 543, 546 ("Arbitration is favored"). The state and courts encourage arbitration because it "provides parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets." *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. Trainable Mentally Retarded Edn. Assn.* (1986), 22 Ohio St.3d 80, 83, 22 OBR 95, 488 N.E.2d 872; see also *Springfield* at 546 ("[T]he purpose of an arbitration is[ ] to avoid needless and expensive litigation"). Appellate courts must ensure that trial courts, the front line of arbitral review, do not exceed the scope of their review authority. Otherwise, "[a]rbitration, which is intended to avoid litigation, would instead merely become a system of 'junior varsity trial courts' offering the losing party complete and rigorous de novo review." *Dayton* at ¶ 13, quoting *Motor Wheel Corp. v.*

*Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 52, 647 N.E.2d 844. Thus, judicial review of an arbitrator's award is strictly limited, "and where a reviewing court exceeds the permissible scope of review such judgment will be reversed." *Hillsboro v. Fraternal Order of Police* (1990), 52 Ohio St.3d 174, 176, 556 N.E.2d 1186.

{¶ 17} "In order to facilitate and encourage the private settlement of grievance disputes, the scope of judicial review of the arbitration proceedings is limited" by statute and construing case law. *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68, 73, 596 N.E.2d 571, citing *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.* (1975), 42 Ohio St.2d 516, 520, 71 O.O.2d 509, 330 N.E.2d 703. We have observed that "[o]nce arbitration is completed, a trial court has no jurisdiction except to confirm, vacate, modify, or enforce the award and only on the terms provided by statute." *Duckett v. Cincinnati Ins. Co.* (Aug. 27, 1984), Clark App. No. 1941, 1984 WL 3838. This means further that the court must strive to uphold the arbitration award. *Hillsboro,* 52 Ohio St.3d at 178, 556 N.E.2d 1186 (a trial court "must be sensitive to upholding an arbitrator's award whenever it is possible to do so"). Two key principles limit arbitral review. First, the arbitrator's award is presumed valid. *Dayton,* 2007-Ohio-1337, 2007 WL 866999, at ¶ 11 ("an arbitrator's award carries with it a strong presumption of validity"). This means that absent contrary evidence, a trial court ought to presume that the arbitration proceedings were regular and had integrity. *Huber Hts.,* 73 Ohio App.3d at 74, 596 N.E.2d 571, citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 131, 551 N.E.2d 186. Second, the trial court may not consider the award's merits—its substantive aspects. See *Duckett.* This limitation means that the trial court must be deaf to claims that an arbitrator made factual or legal errors. *Huber Hts. v. Am. Fedn. of State, Cty. & Mun. Emps., Ohio Council 8, & Local 101* (Feb. 10, 1995), Montgomery App. No. 14762, 1995 WL 51091, *5 ("we [may not] question the accuracy of the arbitrator's factual or legal findings"); *Duckett,* *2 ("substantive questions of fact and law determined in arbitration are not subsequently reviewable in a trial court"). We must consider further this ramification.

### Errors of fact or law must be ignored

{¶ 18} It is because arbitration is a creature of private contract that courts must ignore errors of fact or law. See *Dayton,* 2007-Ohio-1337, 2007 WL 866999, at ¶ 13, quoting *Motor Wheel Corp.,* 98 Ohio App.3d at 52, 647 N.E.2d 844 ("'The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract'"). Parties, by agreeing to allow an arbitrator to resolve their disputes, also implicitly agree to be bound by the

mistakes the arbitrator makes while carrying out his charge. See *Dayton v. Fraternal Order of Police* (June 2, 2000), Montgomery App. No. 18158, 2000 WL 706829, *3, citing *Goodyear*, 42 Ohio St.2d at 522, 71 O.O.2d 509, 330 N.E.2d 703 ("When parties agree to submit their disputes to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy"). The comments to R.C. 2711.10, the statute governing judicial vacation, explain, "The arbitrators are the sole judges of the law and of the evidence and no vacation of an award will be had because of their misconstruction of the facts or of the law." See also *Duckett* (quoting the same) and *Dayton*, 2007-Ohio-1337, 2007 WL 866999, at ¶ 13, quoting *Motor Wheel Corp.*, 98 Ohio App.3d at 52, 647 N.E.2d 844 ("If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain"). Therefore, an error of fact or law alone is not a reason to vacate an award. *Huber Hts.* ("[A]n error of law or fact, * * * [is] insufficient reason[ ] to vacate the award"). For example, in *Duckett*, we reversed a vacation order grounded on the trial court's disagreement with the arbitrator's understanding of Ohio tort law. Each party had argued in favor of an outcome that it believed the law required. "Although these arguments present interesting questions of law and fact," we said, "this Court may not reach the merits of this case." *Duckett*, 1984 WL 3838, *1. We said that the Ohio Supreme Court's conclusion in *Goodyear* was dispositive of the issue: " 'How this or another court might have decided the issue presented to the arbitrator is irrelevant; that decision, by voluntary contract, was left to arbitration.' " *Duckett*, 1984 WL 3838, *2, quoting *Goodyear*, 42 Ohio St.2d at 523, 71 O.O.2d 509, 330 N.E.2d 703; see also *Rathweg Ins. Assoc., Inc. v. First Ins. Agency Corp.* (Aug. 18, 1992), Montgomery App. No. 13184, 1992 WL 206764, *4 ("A court cannot go behind the face of an arbitration award to search for an error of law or fact"). From *Goodyear*, we may derive the fundamental principle upon which arbitral review restrictions rest: a trial court may not substitute its judgment—its view of the facts or law—for that of the arbitrator. See *Rathweg* at *3 ("An award is not reviewable by the courts simply because the arbitrators decided the facts incorrectly, made an error in judgment, or misapplied the law"). Critically then, in reviewing an arbitrator's award, the court must distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate; the latter is not.

### Permissible grounds for vacation

{¶ 19} The grounds upon which a trial court may vacate an arbitrator's award are few and narrow. See *Dayton*, 2007-Ohio-1337, 2007 WL 866999. Vacation is permitted only if the court finds that one of the conditions identified

in R.C. 2711.10 exists—fraud, corruption, misconduct, exceeded powers. See *Goodyear*, 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, at paragraph two of the syllabus (review is limited "to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority"); see also *Duckett*; *Dayton*, 76 Ohio App.3d at 597, 602 N.E.2d 743 (vacation is possible "only if it [found] that the determination fails under the standards of R.C. 2711.10"). "The legislative intent in R.C. 2711.10," we have said, "is that the court 'shall' not confirm an award that is fraught with fraud, corruption, misconduct or is so indefinite that the court cannot determine what it was that the arbitrator decided." *Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL–CIO v. Cent. State Univ.* (1984), 16 Ohio App.3d 84, 86, 16 OBR 89, 474 N.E.2d 647. Any one of these conditions results in a nullity—in other words, the award has no legal validity. Id. at 86–87, 16 OBR 89, 474 N.E.2d 647.

{¶ 20} R.C. 2711.10 establishes four grounds for vacating an arbitrator's award. The first three paragraphs concern fraud, corruption, and misconduct,[1] any one of which "destroys the integrity of the proceedings or the power of the arbitrator." Id. at 86, 16 OBR 89, 474 N.E.2d 647. R.C. 2711.10(D), the fourth (and final) paragraph, says that the award should be vacated if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." This paragraph "authorizes the court of common pleas to vacate an arbitration award upon a finding that the arbitrator exceeded the powers conferred on [him] by the arbitration agreement." *Dayton v. Fraternal Order of Police*, Montgomery App. No. 20863, 2006-Ohio-1129, 2006 WL 574307, at ¶ 8.

### Arbitrator may not exceed his or her powers

{¶ 21} The essential function of paragraph (D) is to ensure that the parties get what they bargained for by keeping the arbitrator within the bounds of the authority they gave him. See *Huber Hts.*, 1995 WL 51091, *2 ("This language [of R.C. 2711.10(D)] reflects the General Assembly's concern that arbitrators operate only within the bounds of the authority granted them within [the] underlying agreement"). The arbitrator's authority comes solely from the

---

1. {¶ a} "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
   {¶ b} "(A) The award was procured by corruption, fraud, or undue means.
   {¶ c} "(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
   {¶ d} "(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." R.C. 2711.10.

parties and is limned and rooted in the arbitration agreement. See id. ("An arbitrator draws his authority to settle disputes and impose awards under a collective bargaining agreement from the agreement itself"). The arbitration agreement generally explains how the arbitrator may resolve the parties' disputes, which often concern how their agreement, in which the arbitration provision is contained, should be understood. In this situation, "the function of the arbitrator is to determine and carry out the mutual intent of the parties by interpreting the agreement and applying its provisions to the issues before him or her." *Dayton*, 76 Ohio App.3d at 597, 602 N.E.2d 743.

{¶ 22} Like arbitral review generally, a trial court's inquiry into whether an arbitrator exceeded his powers under the parties' agreement is limited. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph one of the syllabus ("Given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited"). Paragraph (D) is not violated if "the arbitrator's award draws its essence from the collective bargaining agreement and is not unlawful, arbitrary or capricious." Id. at paragraph two of the syllabus; see also *Dayton v. Am. Fedn. of State, Cty. & Mun. Emps., Ohio Council 8*, Montgomery App. No. 21092, 2005-Ohio-6392, 2005 WL 3240794, at ¶ 10, quoting *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627* (2001), 91 Ohio St.3d 108, 110, 742 N.E.2d 630 ("In light of the deference owed to an arbitrator's decision, a court is 'limited to determining whether an arbitration award is unlawful, arbitrary, or capricious and whether the award draws its essence from the CBA' "). Generally, if the arbitrator's award is based on the language and requirements of the agreement, the arbitrator has not exceeded his powers. See *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1998), 81 Ohio St.3d 269, 273, 690 N.E.2d 1262.

{¶ 23} We are now approaching the heart of this case. We begin by considering whether the arbitrator's award draws its essence from the parties' agreement. We conclude that it does.

**Drawn from an agreement's essence**

{¶ 24} An arbitrator's award draws its essence from an agreement when (1) the award does not conflict with the express terms of the agreement and (2) the award has rational support or can be rationally derived from the terms of the agreement. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emps. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, syllabus. See also *Montgomery Cty. Sheriff v. Fraternal Order of Police, Montgomery Cty. Lodge No. 104*, 158 Ohio App.3d 484, 2004-Ohio-4931, 817 N.E.2d 107, at ¶ 22 ("Only when the arbitrator's award conflicts with the express terms of the

agreement, or is without rational support, or cannot be rationally derived from the terms of the agreement can it be said to depart from the essence of the contract"). We find both tests satisfied.

{¶ 25} Article 7, Section 3, of the agreement contains the parties' agreement on arbitration. Pertinent here: "The arbitrator shall have no power to add to, subtract from, or modify the Agreement in any way, but shall instead be limited to the application of the terms of this Agreement in determining the dispute. * * * His decision shall be final and binding upon the parties to this Agreement. This grievance and arbitration procedure shall be the sole and exclusive remedy for all claimed violations of this Agreement and shall be in lieu of all rights under civil service rules." Neither this provision nor any other in the agreement prevents the arbitrator from ordering the reinstatement of an employee who was discharged without just cause. So by ordering the department to reinstate Marrs, the arbitrator did not violate any express term of the agreement.

{¶ 26} When an arbitration award is "rationally supported" by an agreement or can be "rationally derived" from an agreement, a rational nexus exists between them, *Dayton,* 2006-Ohio-1129, 2006 WL 574307, at ¶ 11, citing *Southwest Ohio,* 91 Ohio St.3d at 110, 742 N.E.2d 630 ("An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the collective bargaining agreement and the award"), or as we have said, the award "rationally flows" from the agreement. See *Huber Hts.,* 1995 WL 51091; *Huber Hts.,* 73 Ohio App.3d at 74, 596 N.E.2d 571. The word "support" has many senses. Here, we understand the Supreme Court's use of the word in the sense of "justify," that the agreement must justify the arbitrator's award: the agreement must give grounds for, make legitimate, or provide justification for, the award. Similarly, the word "derive" can be used in different senses. We understand the court's use of the word here to be in the sense that the award may be "deduced" from the agreement, that it may be obtained by reasoning, or reasoned from the agreement. We conclude that the relationship between the agreement and the arbitrator's award here is such that the agreement supports the arbitrator's award, and the award can be derived from the terms of the agreement.

### "Just cause" to discharge

{¶ 27} The dispute in this case comes down to the arbitrator's interpretation of "just cause."

{¶ 28} The arbitrator's basis for the award is his determination that the department lacked "just cause" to discipline Marrs, which it required under the agreement. Articles 2 and 6 of the agreement say that the department has the

right "to discharge or discipline officers for just cause." See Article 2(B)(8) (stating that the right of the department to direct, manage, and control its employees includes "[t]he termination of probationary Employees, and the termination for just cause of other Employees"). However, the parties did not define "just cause" in the agreement. When "just cause" is left undefined, we have generally deferred to the arbitrator's definition. See *Dayton v. AFSCME, Ohio Council 8*, Montgomery App. No. 21092, 2005-Ohio-6392, 2005 WL 3240794, at ¶ 11 (where it is not defined, the existence or nonexistence of just cause for the employee's discharge "plainly was a matter within the scope of the arbitrator's authority and discretion"); see, e.g., *Dayton*, 2000 WL 706829, *4 (deferring to the arbitrator's just-cause definition because otherwise "the parties were precluded from arbitrating any grievance relative to whether an employee had been terminated, demoted, suspended, or otherwise relieved of duty for just cause by virtue of the fact that just cause is not defined in the agreement," saying, "[i]n our view, this would be an absurd result"). If either party wanted a more specific definition of "just cause," it could have bargained for it. But "[i]n the absence of an express provision to the contrary, it [is] for the arbitrator to determine the meaning of 'just cause.' " *Dayton*, 2000 WL 706829, *4. See also *Summit Cty. Children Servs. Bd. v. Communication Workers of Am., Local 4546*, 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31, at ¶ 19, quoting *Conoco, Inc. v. Oil, Chem. & Atomic Workers Internatl. Union* (N.D.Okla.1998), 26 F.Supp.2d 1310, 1317–1318 ("[I]f the parties do not expressly prohibit its use in the CBA and if they leave the term 'just cause' undefined, they risk the arbitrator's looking 'outside the CBA for guidance in defining, interpreting, and applying that phrase' ").

{¶ 29} The Ohio Supreme Court has explained that "the contractual right of the employer to discipline and discharge employees for 'just cause' requires the arbitrators to make two determinations in considering cases: (1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances." *Miami Twp.*, 81 Ohio St.3d at 271–272, 690 N.E.2d 1262, quoting *Schoonhoven*, Fairweather's Practice & Procedures in Labor Arbitration (3d Ed.1991) 327. See also *Summit Cty.*, 113 Ohio St.3d 291, 2007-Ohio-1949, 865 N.E.2d 31, ¶ 21, citing *Miami Twp.* at 272, 690 N.E.2d 1262 ("[A]n arbitrator's inquiry into whether there is 'good cause' is one that almost always involves two factors—whether the misconduct alleged has been proven and whether the discipline imposed for the misconduct was reasonable"). By separating the "just cause" inquiry into two determinations, the court recognizes that it is possible to challenge separately the actual commission of the misconduct itself and the reasonableness of the discipline imposed for misconduct. *Miami Twp.*, 81 Ohio St.3d at 272, 690 N.E.2d 1262, quoting *Schoonhoven* at 327 (" '[F]or as frequently as not,' explained the court, 'the reasonableness of the penalty (as well as the

actual commission of the misconduct itself) is questioned or challenged in arbitration' "). In most cases, the second determination is the issue—the misconduct is clear, and the issue is the severity of the discipline imposed. Here, conversely, the first determination is the issue: the arbitrator found that the department had failed to prove that Marrs committed the misconduct on which it based its decision to discipline. The issue is not the department's evidence per se—not its quality or quantity—but the procedural question of what quantum of proof the arbitrator should have used to determine whether "cause" existed. This issue is at the heart of the case.

**The quantum of proof**

{¶ 30} The arbitrator's award is grounded on his conclusion that the department failed to prove with "clear and convincing evidence" that Marrs did anything that warrants discipline. The department claims that this is the wrong quantum of proof, that Article 11 of the agreement requires the arbitrator to use a "preponderance of the evidence" standard. In Article 11, the parties agreed simply, "Where not covered by the Agreement, and where not displaced by this Agreement, all applicable laws and provisions, state, local and federal shall apply." Because the quantum of proof is not covered by the agreement, argues the department, the arbitrator should have looked to public law. If he had, he would have found that under Ohio civil service law, in labor and employment disputes before administrative agencies, the quantum of proof is preponderance of the evidence. The arbitrator also would have found that in the vast majority of civil court cases, the quantum of proof used is preponderance of the evidence. Therefore, the department contends, by using a heightened standard, the arbitrator exceeded his powers by failing to interpret and apply the agreement. We reject the department's contention and argument based on Ohio civil service law, state and federal case law, and the parties' agreement itself.

{¶ 31} It is not clear whether under the civil service law, a procedural issue like the quantum of proof implicates Article 11. Chapter 4117 of the Revised Code governs collective bargaining in the public sector generally. See *Dayton*, 2000 WL 706829. Section 4117.10 specifically governs the terms of a collective-bargaining agreement, and the department says in its brief that Article 11 intentionally reflects paragraph (A) of this section. The first sentence of this paragraph says, "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wage, hours, and terms and conditions of public employment covered by the agreement." And the third sentence says, "Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees." We note

in particular the part of the statute that says that laws "pertaining to" wages, hours, and the terms and conditions of employment apply when an agreement is silent. A strong argument can be made that procedural matters, like what quantum of proof applies at an arbitration, fall outside these three categories.[2]

{¶ 32} We observe too that the idea of the arbitrator alone having the power to set the quantum of proof finds strong support in the case law. The Ohio Supreme Court, federal circuit courts, and the United States Supreme Court agree that absent express language in an agreement, procedural issues are decided by the arbitrator. The Ohio Supreme Court says that the arbitrator has the inherent power to decide the question of proof: in determining whether "just cause" exists for discipline, and " ' "[i]n the absence of contract language expressly prohibiting the exercise of such power, the arbitrator, by virtue of his authority and duty to fairly and finally settle and adjust (decide) the dispute before him, has the inherent power to determine the sufficiency of the cause and the reasonableness of the penalty imposed." ' " *Miami Twp.*, 81 Ohio St.3d at 272, 690 N.E.2d 1262, quoting *Schoonhoven* at 327, quoting *Great Atlantic & Pacific Tea Co.* (1962) 63–1 Labor Arbitration Awards, ¶ 8027 at 3090. Federal appellate courts say the same. See, e.g., *Keebler Co. v. Truck Drivers, Local 170* (C.A.1, 2001), 247 F.3d 8 (finding no problem with an arbitrator's use of a clear-and-convincing standard, saying that when an arbitration agreement is silent on the quantum of proof, the arbitrator may set his own rules of procedure); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Dist. Local No. 540 v. Neuhoff Bros. Packers, Inc.* (C.A.5, 1973), 481 F.2d 817, 819–820 (noting that the agreement did not define a standard of proof, and "it was not impermissible for the arbitrator, as a basic part of his decisional process, to establish what he considered an appropriate standard"); *Gen. Drivers, Helpers & Truck Terminal Emps., Local No. 120 v. Sears, Roebuck & Co.* (C.A.8, 1976), 535 F.2d 1072, 1076 (stating that "[b]ecause collective bargaining agreements are generally silent on procedural matters such as rules of evidence an arbitration panel must be vested with the inherent authority to make procedural rulings").

{¶ 33} Finally, the United States Supreme Court has said that procedural questions are for the arbitrator, not the court. See *John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898. The court applied this rule to evidentiary matters in *United Paperworkers Internatl. Union v. Misco, Inc.* (1987), 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286. There, the arbitrator found no just cause for discharge because the employer had failed to prove misconduct, so he ordered the employer to reinstate the employee. The employer appealed on the grounds that the arbitrator should have accepted the

---

**2.** This is not to say that parties cannot bargain for binding procedural rules.

strong evidence of misconduct that it discovered after it made the decision to terminate, which the arbitrator had refused to consider because the employer did not rely on the evidence when it made its decision. The Supreme Court said that evidentiary decisions made by an arbitrator are generally not grounds to vacate. The arbitrator, said the court, was interpreting and applying the agreement when he refused to accept the proffered evidence. "[W]hen the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator." Id. at 40, 108 S.Ct. 364, 98 L.Ed.2d 286.

{¶ 34} Resolution of the issue under Ohio civil service law and the case law is here unnecessary. Our point is that the arbitrator may, or may not, have gotten the law wrong, that he may, or may not, have misinterpreted the agreement, that he merely erred in *executing* his powers. The department fails to show, however, that the arbitrator *exceeded* his powers. As we said above, reviewing courts are deaf to claims of legal error, which is not grounds for vacation.

{¶ 35} The law thus provides for the arbitrator's action a foundation significantly more solid than sand. But it is the parties' agreement itself that makes the foundation approach the solidity of rock. What is perhaps the main reason for why we reject the department's contention and argument is this: the department gave the arbitrator the power to set the quantum of proof by agreeing to arbitrate under the auspices of the American Arbitration Association ("AAA") using its rules.

{¶ 36} Article 7, Section 3, of the agreement says that if the parties cannot resolve a grievance otherwise, "[e]ither the City or the Union may then request the appointment of an arbitrator by the American Arbitration Association pursuant to its rules." According to Rule 1 of the AAA's Employment Arbitration Rules, "[t]he parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules." [3] Rule 8 (arguably) gave the arbitrator the power to choose the quantum of proof (and makes it puzzling why this issue is before us): "At the Arbitration Management Conference the matters to be considered shall include, without limitation * * * d. the law, standards, rules of evidence, and burdens of proof that are to apply to the proceeding." Id. "The arbitrator," Rule 8 concludes, "shall issue oral or written orders reflecting *his or her decisions* on the above

---

3. The parts of the rules cited here were the same in 2008 when this arbitration was held.

matters * * *." Id. (Emphasis added). The agreement, then, does address the quantum of proof, so Article 11 was not implicated.

**Award is not arbitrary or capricious**

{¶ 37} An arbitrator's award also fails to derive its essence from an agreement if it is unlawful, arbitrary, or capricious. The award is arbitrary or capricious if the arbitrator's attitude in fashioning the award was arbitrary or capricious. *Huber Hts.*, 1995 WL 51091. We find no evidence that the arbitrator's attitude was arbitrary or capricious. With respect to the award's legality, the reinstatement of an employee, discharged though he did nothing wrong, violates no enacted law. The department, however, contends that Marrs's reinstatement is unlawful because it violates Ohio public policy. We will consider this contention in our review of the fifth assignment of error.

{¶ 38} The first, second, third, and fourth assignments of error are sustained.

**B**

{¶ 39} The fifth assignment of error reads:

{¶ 40} "The trial court erred in concluding the arbitrator's ruling violated public policy."

{¶ 41} The Ohio Supreme Court has said that "vacating an arbitration award pursuant to public policy is a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards." *Southwest Ohio*, 91 Ohio St.3d at 112, 742 N.E.2d 630, citing *United Paperworkers Internatl. Union*, 484 U.S. at 43, 108 S.Ct. 364, 98 L.Ed.2d 286. We have said that "[a] court may refuse to enforce an arbitration award when specific terms in the contract would violate public policy." *Dayton*, 2005-Ohio-6392, 2005 WL 3240794, at ¶ 23, quoting *Lawrence Cty. Bd. of Commrs. v. L. Robert Kimball & Assoc.* (C.A.6, 1988), 860 F.2d 683, 686. "[B]ut," we have emphasized, "there is no broad power to set aside an arbitration award as against public policy." Id.

{¶ 42} The issue in this claim is not whether the alleged misconduct violates some public policy, but whether the arbitrator's award does. See id.; see also *Southwest Ohio*, 91 Ohio St.3d at 112, 742 N.E.2d 630, citing *W.R. Grace & Co. v. Local 759, Internatl. Union of Rubber, Cork, Linoleum & Plastic Workers of Am.* (1983), 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298. We concluded above that the arbitrator's finding that Marrs committed no misconduct is valid and binding. An award reinstating an employee who has done nothing wrong does not violate Ohio public policy.

{¶ 43} The fifth assignment of error is sustained.

### C

{¶ 44} The sixth assignment of error reads:

{¶ 45} "The trial court erred to the prejudice of the appellant by not awarding interest on all monies due and payable."

{¶ 46} Presumably because it vacated the arbitrator's award, the trial court did not address the union's request for prejudgment interest under R.C. 1343.03. Because there is no trial court action or decision to review, we decline to consider the sixth assignment of error. This issue ought to be addressed by the trial court on remand.

### III

{¶ 47} Having sustained the five assignments of error properly before us, the trial court's order is reversed, and this case is remanded for further proceedings.

Judgment reversed
and cause remanded.

DONOVAN, P.J., and FAIN, J., concur.