[Cite as *Dayton v. International Assoc. of Firefighters, Local 136*, 2018-Ohio-2746.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CITY OF DAYTON | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27600 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-1030 |
| | : | |
| INTERNATIONAL ASSOCIATION OF | : | (Civil Appeal from |
| FIREFIGHTERS, LOCAL 136 | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 13th day of July, 2018.

. . . . . . . . . .

NORMA M. DICKENS, Atty. Reg. No. 0062337, 101 West Third Street, P.O. Box 22, Dayton, Ohio 45401
        Attorney for Plaintiff-Appellee

SUSAN D. JANSEN, Atty. Reg. No. 0039995, 111 West First Street, Suite 1100, Dayton, Ohio 45402-1156
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant International Association of Firefighters, Local 136, A.F.L.-C.I.O, CLC (hereinafter "Union") appeals the judgment of the Montgomery County Common Pleas Court vacating an arbitration award issued in the Union's favor. The Union contends that the trial court improperly substituted its judgment for that of the arbitrator and, thus, erred in finding that the arbitrator exceeded his authority. We agree. For the reasons set forth below, we reverse and remand to the trial court to confirm the arbitration award.

## I. Facts and Procedural History

**{¶ 2}** The City of Dayton (hereinafter "City") and the Union are parties to a Collective Bargaining Agreement (hereinafter "CBA") effective June 1, 2015 through May 31, 2018. Tony Hoshor, a Paramedic, and Steven Bristow, an Emergency Medical Technician (hereinafter "EMT"), are employed by the Dayton Fire Department and are members of the Union.

**{¶ 3}** According to the CBA, Paramedics and EMTs are 40-hour per week employees, and their payroll week runs from Monday to Monday. However, because firefighters are platoon shift employees who work 24-hour work shifts, Paramedics and EMTs are also scheduled within a 24-hour platoon shift for purposes of operational convenience. Thus, Paramedics and EMTs are scheduled to work a long week, followed by two short weeks. On long weeks, they are scheduled to work two 24-hour shifts. On short weeks, they work a 24-hour shift on Tuesday and a 16-hour shift on Friday, or they work a 24-hour shift on Wednesday and a 16-hour shift on Saturday. On the short

weeks, it is generally assumed that Paramedics and EMTs will work an 8-hour shift immediately following their 16-hour shift unless they give notice, one duty day in advance, of their intent not to work the 8-hour shift.

{¶ 4} Hoshor and Bristow, during a scheduled short week, worked a 24-hour shift on Wednesday, July 22, 2015. They were scheduled to work their 16-hour shift followed by an 8-hour shift on Saturday, July 25. However, when they arrived at work on Saturday at 7:00 a.m., management informed them that a complaint had been filed against them by a citizen concerning an emergency run they performed on July 22.[1] They were placed on Paid Administrative Leave (hereinafter "PAL") and were sent home around noon. Both Hoshor and Bristow were paid for 40 hours of work for that week which included their 24- and 16-hour shifts. However, they were not paid for the scheduled 8-hour overtime shift.

{¶ 5} On September 17, 2015, the Union filed timely grievances on behalf of both Hoshor and Bristow claiming that they were entitled to be paid at the overtime rate for the scheduled 8-hour shift. The City denied the grievances stating that Hoshor and Bristow were not eligible for overtime pay because they did not actually work in excess of forty hours. The denial was challenged, and the matter was submitted to binding arbitration in accordance with the CBA. The two grievances were consolidated, and a hearing was conducted in September 2016.

{¶ 6} Following the hearing, the arbitrator entered a decision in favor of Hoshor and Bristow. In his decision, the arbitrator found that although Article 8, Section 1.B.1.

---

[1] Bristow and Hoshor were cleared of any misconduct and returned to work for their next regularly scheduled shift on July 28, 2015.

of the CBA prohibits employees on vacation, holiday, sick leave, leave of absence, suspension and all other non-duty status absences, from receiving overtime pay, it does not specifically exempt PAL. The arbitrator went on to conclude that PAL is not a non-duty status absence. In doing so, the arbitrator found the absences set forth in Section 1.B.1. are for fixed periods of time during which employees who are away from work are not subject to recall during their fixed leave time. The arbitrator further found that employees on PAL, which is generally an indefinite period of time, were subject to recall to work at management's discretion. Thus, the arbitrator concluded that PAL does not exclude an employee from receiving overtime pay. The arbitrator issued a decision sustaining the grievances and awarding Hoshor and Bristow pay for the overtime hours.

{¶ 7} The City filed an action to vacate the arbitrator's award with the Montgomery County Court of Pleas. The City argued that the terms of the CBA rendered Hoshor and Bristow ineligible for overtime pay. Specifically, the City argued, citing to Article 8, Section 1.B.1., that the terms "actual hours worked" and "non-duty status absences" are not ambiguous terms, and thus are not subject to interpretation. According to the City, "the CBA is exceedingly clear that a non-sworn employee must actually work; not be on some type of paid leave while sitting at home (i.e., vacation, sick leave, non-duty status, etc.), to qualify for overtime." Thus, the City argued that the arbitrator exceeded his authority by ruling in favor of Hoshor and Bristow.

{¶ 8} The trial court found that the arbitrator exceeded his authority because the CBA "clearly and without ambiguity states that [EMTs and Paramedics] are forty (40) hour per week employees and that they are only paid overtime for hours actually worked beyond the forty (40) hours required. Arbitrator Goldberg attempted to find an equitable

solution by arguing uncertainty in this clear language.    His interpretation of the CBA was outside of the scope of his authority, which allowed him to interpret the clear language of the agreement only."    Thus, the trial court vacated the award.

**{¶ 9}** The Union appeals.

## II. The CBA

**{¶ 10}** The CBA contains the following provisions relevant to this appeal:

Article 8 – Hours of Work and Overtime

Section 1.    Hours of Work

* * *

B.    The normal scheduled work week for Paramedics and EMTs shall be forty (40) hours per week as follows:

1.    During weeks where Paramedics and EMTs are scheduled to work Monday, Thursday and Sunday, they shall work two (2) twenty-four (24) hour shifts and have one scheduled day off.    They shall be compensated for [overtime] at time and one-half (1 ½) at the FLSA rate for the actual hours worked in excess of forty (40) during this week.    For the purposes of this subsection only, actual hours worked shall not include an employee on vacation, holiday, sick leave, leave of absence, suspension and all other non-duty status absences.    * * *

2.    During weeks where Paramedics and EMTs are scheduled to work Tuesday and Friday, or Wednesday and Saturday, they shall be scheduled to work a twenty-four (24) hour shift and a continuous sixteen (16) hour shift.

Section 2.   Overtime

* * *

B.   The normal scheduled work day shall be considered as twenty-four (24) hours or sixteen (16) hours for Paramedics or EMTS, as scheduled by Management.

* * *

D. Overtime is considered as time worked in excess of a regularly scheduled work week, and shall be based upon the following:

1.   Overtime will be paid to employees for hours worked in excess of the scheduled work day or work week provided the employee has worked a full scheduled work week.   * * *

* * *

4.   For the purposes of computing overtime, an employee on paid leave of absence, holiday or vacation shall be considered to have worked his/her normal work shifts during absences.

* * *

6.   Management shall establish and administer a written overtime policy.

* * *

{¶ 11} General Order No. 86 is a policy promulgated by Management that addresses the work hours of Paramedics and EMTs.   It states, in pertinent part, the following:

As required by the Contract between the City of Dayton and Local 136 of

the IAFF, Dayton Fire Department Paramedics and EMTs are to work 40 hours per week according to the following:

THREE DAY WORK WEEK (Long Week)

When Paramedics and EMTs are scheduled to work Monday, Thursday, and Sunday, they shall work two twenty-four shifts and have a Scheduled Day Off   * * *.

During their forty-eight hour (48) hour weeks, Paramedics and EMTs will be paid FLSA overtime for actual hours worked in excess of forty hours. * * *

During their "long" week, EMTs and PMs [Paramedics] are accountable for 48 hours, meaning if they take off the entire week they will be charged 48 hours of leave.   Those employees who are physically present for over 40 hours will receive overtime pay for the hours worked over forty.   In any case, employees will be paid a minimum of 48 hours of regular pay during this week.   There is no Approved Absence ("AA") option during this week. * * *

TWO DAY WORK WEEK (Short Week)

During weeks where Paramedics and EMTs are scheduled to work Tuesdays and Fridays, or Wednesdays and Saturdays, they shall be scheduled for work one twenty-four hour shift and one continuous sixteen-hour shift.   On their sixteen hour shift, they will be entered as normal assignment for 16 hours and "AA" for the remaining eight hours.   It will

generally be assumed that the employee will stay over and work the eight hours of FLSA overtime in lieu of taking the AA time off. If the employee chooses instead to take the AA time off, this notification will be given to the DC one duty day in advance to allow for appropriate staffing.

### III. Standard of Review

{¶ 12} "Public policy favors arbitration." *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, ¶ 14 (1st Dist.), quoting *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 109, 742 N.E.2d 630 (2001). "Arbitration 'provides the parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets.' " *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 21 (8th Dist.), quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83, 488 N.E.2d 872 (1986).

{¶ 13} "Judicial review of arbitration awards is limited in order to encourage parties to resolve their disputes in arbitration." *Piqua v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 16 (2d Dist.). The vacation of an arbitrator's award is permitted when the court finds that one of the conditions set forth in R.C. 2711.10 exists. *Id.* at ¶ 19. R.C. 2711.10(D) states that a court of common pleas may vacate an award if it finds that the arbitrator exceeded his or her powers. In order to determine whether an arbitrator has exceeded his or her authority, a court must look to whether the award "draws its essence" from the CBA.

*Queen City Lodge No. 69, Fraternal Order of Police* at ¶ 17. An award satisfies this requirement when there is a rational nexus between the CBA and the award. *Id.* at ¶ 18. "If there is a rational nexus between the CBA and the arbitrator's award and the award is not arbitrary, capricious or unlawful, the arbitrator did not exceed [his or] her authority and the award cannot be vacated pursuant to R.C. 2711.10(D)." *Montgomery Cty. Sheriff v. Fraternal Order of Police*, 158 Ohio App.3d 484, 2004-Ohio-4931, 817 N.E.2d 107, ¶ 22 (2d Dist.). "Only when the arbitrator's award conflicts with the express terms of the agreement, or is without rational support, or cannot be rationally derived from the terms of the agreement can it be said to depart from the essence of the contract." *Id.*, citing *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps Assn., Local 11 AFSCME, AFL–CIO*, 59 Ohio St.3d 177, 183, 572 N.E.2d 71 (1991).

{¶ 14} This court's review of the decision of the court of common pleas is de novo. *Kettering Health Network v. CareSource*, 2d Dist. Montgomery No. 27233, 2017-Ohio-1193, ¶ 10. A de novo review is conducted because "[t]he question whether an arbitrator has exceeded his [or her] authority is a question of law * * *." *Portage Cty. Bd. Of Dev. Disabilities v. Portage Cty. Educator's Assn. for Dev. Disabilities*, 2018-Ohio-1590, __N.E.3d__, ¶ 25.

## IV. Analysis

{¶ 15} The sole assignment of error presented by the Union states as follows:

THE TRIAL COURT ERRED IN GRANTING THE CITY OF DAYTON'S MOTION TO VACATE THE ARBITRATOR'S AWARD AND OVERRULING APPELLANT'S MOTION TO CONFIRM THE ARBITRATION AWARD.

{¶ 16} The issue that must be decided is whether the CBA requires, without ambiguity, an EMT or Paramedic to actually work in excess of forty hours to be entitled to overtime pay or whether, under the presented facts and the CBA language, there is ambiguity concerning the grievants' entitlement to the contested overtime pay. We conclude that the CBA does not address the precise issue presented to the arbitrator, making an interpretation necessary. Since a contractual interpretation was required, the arbitrator, whether the decision is correct or not, did not exceed his authority.

{¶ 17} A significant ambiguity, not discussed by the parties or the arbitrator, is whether the Article 8, Section 1.B.1. language restricting overtime is applicable to Article 8, Section 1.B.2. Section 1.B.1., which deals with hours worked and overtime entitlement during a long week, states that "for the purposes of this subsection only" actual hours worked for the determination of overtime entitlement shall not include "vacation, holiday, sick leave, leave of absence, suspension and all other non-duty status absences." Section 1.B.2., which deals with hours worked and overtime entitlement during a short week, does not contain language restricting overtime pay. Given this, there is, at least, ambiguity concerning whether the Section 1.B.1. overtime restrictions are applicable to Section 1.B.2. We, therefore, will initially discuss the overtime issue under the assumption that the Section 1.B.1. overtime restrictions are inapplicable to Section 1.B.2.

{¶ 18} The CBA does not define or otherwise discuss PAL, but the term suggests that if an employee is on PAL, his or her pay will not be altered. This thought is consistent with the City paying Hoshor and Bristow for a 16-hour shift on July 25 despite being sent home approximately 5 hours into the shift. Deputy Chief Paul Sheehan testified that the

payment of overtime compensation to an employee on PAL is not addressed by the CBA. Sheehan further testified that if an EMT or Paramedic becomes ill during a 16-hour shift, the employee would be charged with sick leave (for which he would receive full regular pay) for the remainder of the 16-hour shift and that the ensuing 8-hour shift would become an approved absence (AA). Sheehan then testified that he applied the same logic to the grievants' PAL status. The City's interpretation is consistent with the conclusion that overtime will be paid only when the employee actually works in excess of 40 hours, but, if the Section 1.B.1. restrictive language is not applicable, and given the seeming import of PAL, there is another conclusion which may be reached.

{¶ 19} This alternate conclusion begins with the premise that an employee on PAL, as the name suggests, is entitled to be paid at the contractually agreed-upon rate for the hours he would have worked if not on PAL. Hoshor and Bristow, since neither had opted for AA, were scheduled to work the 8-hour shift at the contractually agreed upon time and one-half (1½) overtime rate. The CBA, based upon the grievants' PAL status and the CBA's failure to address an employee's pay status when on PAL, can reasonably be interpreted to mandate Hoshor and Bristow's entitlement to the contested overtime pay.

{¶ 20} This interpretation, though not addressed by the arbitrator or the parties, is consistent with the CBA and General Order No. 86. As such, there is a rational nexus between the arbitrator's award and the CBA. It, therefore, cannot be concluded that the arbitrator exceeded his authority by ruling in the Union's favor.

{¶ 21} Finally, even if Section 1.B.1. restricts overtime pay in both long and short weeks, we nonetheless conclude that the arbitrator did not exceed his authority.

{¶ 22} Section 1.B.1. does state overtime will only be paid for actual hours worked

in excess of the normal forty-hour week.   If Section 1.B.1. said nothing further, this would end the discussion, but, instead, Section 1.B.1. goes on to articulate certain absences that will not be considered as "actual hours worked."   This indicates there are some absences that will not act to preclude overtime pay.

{¶ 23} The arbitrator, with this starting point and based upon PAL not being specifically excluded from consideration as actual hours worked, examined whether PAL is appropriately included in the catchall phrase "all other non-duty status absences."   The arbitrator, consistent with the evidence presented, noted that an employee not at work because of one of the specifically excluded absences, cannot be called in to work during such an absence.   The arbitrator further noted, again consistent with the evidence, that an employee on PAL can be called in to work, and, if so called, is expected to report for duty.   The arbitrator, given this testimony, concluded that PAL is not a non-duty status absence, and, as such, Hoshor and Bristow were entitled to overtime pay for the 8-hour shift.

{¶ 24} We conclude, assuming Section 1.B.1. is germane to the dispute, that the language is not free from ambiguity.   We may not have reached the arbitrator's conclusion, but "[w]hen a provision in a collective-bargaining agreement is subject to more than one reasonable interpretation and the parties have agreed to submit their contract-interpretation disputes to binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of the reviewing court, governs the rights of the parties thereto." *Montgomery Cty. Sheriff v. Fraternal Order of Police, Montgomery Cty. Lodge No. 104*, 158 Ohio App. 3d 484, 2004-Ohio-4931, 817 N.E.2d 107, ¶ 23 (2d Dist.), citing *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 52 Ohio St.3d 174, 556 N.E.2d

1186 (1990). We cannot say the arbitrator's interpretation is unreasonable. Therefore, the arbitrator's interpretation controls.

{¶ 25} The Union's sole assignment of error is sustained.

## V. Conclusion

{¶ 26} The sole assignment of error being sustained, the judgment of the trial court is reversed and this matter is remanded for the trial court to enter an order confirming the arbitration award.

. . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies mailed to:

Norma M. Dickens
Susan D. Jansen
Hon. Mary Katherine Huffman