[Cite as *Kettering Health Network v. Caresource*, 2017-Ohio-1193.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

KETTERING HEALTH NETWORK,     :
et al.                        :
                              :     Appellate Case No. 27233
        Plaintiffs-Appellees  :
                              :     Trial Court Case Nos. 2013-CV-2016
v.                            :                         2015-CV-4512
                              :
CARESOURCE                    :     (Civil Appeal from
                              :      Common Pleas Court)
        Defendant-Appellee    :

. . . . . . . . . . .

O P I N I O N

Rendered on the 31st day of March, 2017.

. . . . . . . . . . .

GARY J. LEPPLA, Atty. Reg. No. 0005541, and PHILIP J. LEPPLA, Atty. Reg. No. 0089075, Leppla Associates, Ltd., 2100 South Patterson Boulevard, Dayton, Ohio 45409
        Attorneys for Plaintiffs-Appellees

JEFFREY A. LIPPS, Atty. Reg. No. 0005541, JOEL E. SECHLER, Atty. Reg. No. 0076320, Carpenter Lipps & Leland, LLP, 280 North High Street, Columbus, Ohio 43215 And
MARK R. CHILSON, Atty. Reg. No. 0016511, CareSource, 230 North Main Street, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} CareSource appeals the trial court's overruling of its application to vacate an arbitration award in favor of Kettering Health Network. Finding no error, we affirm.

## I. Background

{¶ 2} CareSource is a managed care payer that administers Medicaid payments and services for certain Ohio Medicaid beneficiaries under a contract with the Ohio Department of Job and Family Services (ODJFS). ODJFS pays CareSource a set amount per beneficiary, and CareSource in turn contracts with health-care providers, like Kettering, for the health care services. The plan and provider establish the terms of service and payment in a contract between them.

{¶ 3} CareSource and Kettering entered into such agreements, which required Kettering to provide medical care and services to CareSource beneficiaries in exchange for payment from CareSource. Two of these agreements are relevant in this case. The first one went into effect in 1987, and the parties entered into a replacement in 2005. Among the services covered by these two agreements are unlisted outpatient surgical procedures (UOSPs). In the 1987 Agreement, for these UOSPs, CareSource agreed to pay Kettering "compensation that is equivalent to the amount that Hospital would have received if the State of Ohio had not contracted with the DAHP [CareSource's former name] to administer the Medicaid program." 1987 Agreement, Section 3.7. The 2005 Agreement provides that CareSource will pay Kettering "100% of the current prevailing Ohio Medicaid fee schedule." 2005 Agreement, Attachment A.1.[1] The relevant line in the

---

[1] The 2005 Agreement provides that Kettering is to be compensated for UOSPs "as set forth in applicable Attachments attached hereto." 2005 Agreement, Article 4.2.

Medicaid fee schedule says that unlisted healthcare services are paid at " '69% of Charges.' " *Interim Award*, 5.

{¶ 4} Since 1987, for every UOSP that Kettering provided to a CareSource member, Kettering submitted an invoice that broke down the charges into several line items. One line item was the charge for the UOSP itself, and the other line items were charges for related services. CareSource paid Kettering for the UOSP line item only, paying Kettering nothing for the related services. Kettering alleges that CareSource should have paid it for each line item. There are 588 UOSP underpayment claims at issue, made between 2001 and 2011, arising under both the 1987 Agreement and the 2005 Agreement. In 2013, Kettering filed a complaint and a motion to compel partial arbitration. CareSource responded by filing a motion to compel arbitration.

{¶ 5} The 1987 and 2005 Agreements each contains a dispute resolution provision. Section 4.1 of the 1987 Agreement says that "to resolve disputes, including fee disputes," the parties will use a particular grievance procedure, described in an attachment to the agreement. And Article 7.11 of the 2005 Agreement says that "[t]he parties shall resolve complaints, grievances or disputes arising between parties * * * in accordance with the dispute resolution procedures described in the arbitration proceedings of the American Health Lawyers Association [AHLA]." The 2005 Agreement also contains an integration clause, in Article 7.6, which pertinently states, "This Agreement, Attachments, and Amendments hereto contain all the terms and conditions agreed upon by the parties and supersedes all other agreements, express or implied, regarding the subject matter hereof." The question before the trial court was whether Article 7.11 supersedes Section 4.1. The court concluded that it does, so it ordered the

parties to arbitrate all of Kettering's underpayment claims. Kettering appealed, and we affirmed. We concluded that "Article 7.6 of the 2005 Agreement is reasonably susceptible to CareSource's interpretation that its effect is retroactive such that Article 7.11 of the 2005 Agreement supersedes the 1987 Agreement." *Kettering Health Network v. Caresource*, 2d Dist. Montgomery No. 25928, 2014-Ohio-956, ¶ 39.

{¶ 6} Kettering's underpayment claims then went to arbitration under the auspices of the AHLA, and an arbitration hearing was held over several days in March 2015. On June 29, 2015, the arbitrator issued an "Interim Award" to Kettering ordering CareSource to pay damages of $2,061,803[2]. The arbitrator then ordered the parties to submit post-hearing briefs on the issue of prejudgment interest. Once the interest issue is resolved, wrote the arbitrator, "a Final Award will be entered." *Interim Award*, 34. On August 27, 2015, the arbitrator issued a "Final Award," which "incorporates by reference * * * the merits determinations of the Interim Award * * *, adds the decision on pre-award interest, makes the costs allocation, and determines a total amount owed." *Final Award*, 1. The arbitrator awarded Kettering prejudgment interest totaling $756,660.

{¶ 7} On August 13, a couple of weeks before the arbitrator issued the Final Award, CareSource notified the arbitrator and Kettering that it was terminating arbitration. CareSource argued that the deadline for a final award was July 3 and that the arbitrator was in violation of AHLA Rules. And on August 14, CareSource filed an application to vacate the Interim Award. On August 27, Kettering filed an application to confirm the Final Award. The cases were consolidated. Thereafter, CareSource filed an application to

---

[2] This figure is rounded, as all figures are in this opinion.

vacate the Final Award too. On August 22, 2016, the trial court denied the applications to vacate and granted the application to confirm.

{¶ 8} CareSource appealed.

## II. Analysis

{¶ 9} CareSource assigns four errors to the trial court. Each argues a particular basis for why the court erred by not vacating the arbitration awards. The first assignment of error argues that the Final Award was untimely and is invalid under the AHLA Rules. The second argues that the awards conflict with provisions in the parties' agreements. The third argues that the arbitrator misinterpreted Ohio course-of-performance law. And the fourth assignment of error argues that the prejudgment-interest award conflicts with the parties' agreements and disregards Ohio's Prompt Pay Act. Before getting to the assignments of error, we discuss our standard of review and the scope of the arbitrator's power.

{¶ 10} Under the Ohio Arbitration Act, the court of common pleas must confirm an arbitration award unless the award is modified, corrected, or vacated. R.C. 2711.09. The court's confirmation or vacation decision may then be appealed. R.C. 2711.15. Ohio district courts do not appear to agree on the appropriate standard of review for a decision confirming an award. Some districts apply an abuse-of-discretion standard. *See, e.g.*, *Fresh Eggs Mgr., L.L.C. v. Ohio Fresh Eggs*, 10th Dist. Franklin No. 12AP-1074, 2013-Ohio-3454, ¶ 18. ("This court has recognized that a trial court's judgment confirming an arbitration award is subject to review using an abuse of discretion standard"); *Marshall v. Colonial Ins. Co.*, 11th Dist. Trumbull No. 2007-T-0013, 2007-Ohio-6248*,* ¶ 14 ("The standard of review for judgments on arbitration awards is abuse of discretion."). Other

districts apply a de novo standard, reviewing a confirmation decision only to see if the trial court erred as a matter of law. *See, e.g.*, *Bowden v. Weickert*, 6th Dist. Sandusky No. S-05-009, 2006-Ohio-471, ¶ 51 ("The standard of review to be employed on appeal is whether the lower court erred as a matter of law in confirming the arbitration award."); *Lauro v. Twinsburg*, 9th Dist. Summit No. 23711, 2007-Ohio-6613, ¶ 7 ("[A]n appellate court may only review the lower court's order to discern whether an error occurred as a matter of law."). This Court too reviews decisions confirming an arbitration award de novo, asking "whether the trial court erred as a matter of law," *Dayton v. Internatl. Assn. of Firefighters, Local No. 136*, 2d Dist. Montgomery No. 21681, 2007-Ohio-1337, ¶ 11.[3]

{¶ 11} Kettering argues that appellate review "is not a de novo review of the merits of the dispute" but a review for abuse of discretion. We agree that a de novo review of the merits would be incorrect, but so too is review for abuse of discretion. The Ohio Arbitration Act does not give a trial court discretion in its review of an award. By statute, a court must confirm if it does not modify, correct, or vacate. R.C. 2711.09. And a court can vacate an award only for the reasons enumerated in R.C. 2711.10. Also, under the analogous, substantively equivalent provisions in the Federal Arbitration Act,[4] the U.S. Supreme Court has said that there is "no *special* standard" (emphasis sic.) governing a circuit court's review of a district court's decision to confirm an arbitration award, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947, 115 S.Ct. 1920, 131 L.Ed.2d 985

---

[3] We have referred to this standard as de novo. *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 15 (2d Dist.); *Sicor Secs., Inc. v. Albert*, 2d Dist. Montgomery No. 22799, 2010-Ohio-217, *2.

[4] The Ohio Supreme Court has said that R.C. 2711.10 "is substantively equivalent to the analogous provisions of the Federal Arbitration Act, and we have often used federal law in aid of our application of the statute." *Cedar Fair, L.P. v. Falfas*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, ¶ 5.

(1995). "Rather," said the Court, review "should proceed like review of any other district court decision finding an agreement between parties, *e.g.,* accepting findings of fact that are not 'clearly erroneous' but deciding questions of law *de novo.*" *Id.* at 947-948.

{¶ 12} As for the scope of an arbitrator's power, the basis for vacating an arbitration award pertinent here is found in R.C. 2711.10(D), which provides that a court must vacate an award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The scope of an arbitrator's power is determined by the parties. *Cedar Fair* at ¶ 5. Accordingly, an arbitrator exceeds his power if the arbitrator goes beyond the authority given by the parties. *Id.* at ¶ 7 (saying that "under R.C. 2711.10(D) arbitrators can exceed their powers by going beyond the authority provided by the bargained-for agreement").

A. *The arbitrator's interpretation of procedural rules*

{¶ 13} The AHLA has its own procedural rules governing arbitration, the "Rules of Procedure for Arbitration." CareSource argues in the first assignment of error that the Final Award was untimely and is invalid under the AHLA Rules. CareSource contends that the arbitrator exceeded his power by interpreting (incorrectly, in CareSource's view) AHLA Rule 7.1 and Rule 6.8(b). Rule 7.1 concerns when an arbitrator must issue an award and provides that "[a]n arbitrator must issue an award within 30 days after the hearing is closed unless the arbitrator and all parties agree to extend this deadline." Rule 6.8 concerns when a hearing closes, and Rule 6.8(b) provides that "[i]f the arbitrator sets a schedule for the submission of post-hearing briefs or other documents, the arbitrator will declare that the hearing is closed as of the final due date for such submissions."

{¶ 14} Here, the hearing ended on March 19, 2015, and the arbitrator set May 15 as the final due date for submitting post-hearing briefs. On May 22, the arbitrator asked the parties via email for an extension of the 30-day deadline, and all agreed to extend the deadline to July 3. The arbitrator issued the Interim Award on June 29. On August 13, CareSource notified the arbitrator and Kettering that it was terminating arbitration because no final award had been issued. The arbitrator issued the Final Award on August 27. CareSource argues that the Final Award was issued after the deadline, so it was untimely and a violation of AHLA Rules.

{¶ 15} The arbitrator addressed this argument in his ruling on CareSource's notice of termination (Post-Hearing Order No. 1), finding no rule violation. The arbitrator first found that the Interim Award satisfies Rule 7.1, pointing out that the rule says only that "an award"—not a "final award"—must be issued by the deadline. Interim awards, said the arbitrator, are often issued first to address the merits of a dispute, with questions of fees, costs, and interest deferred until later. On the question of when the hearing closed, the arbitrator said that the gist of Rule 6.8 is that it is the arbitrator who both decides when to close a hearing and declares a hearing closed. *See generally* Rule 6.8(a) ("GENERAL RULE. Except as provided in subparagraph (b), when the parties indicate that they have no further evidence to present, or the arbitrator determines that the record is complete, the arbitrator will declare the hearing is closed."). Also, he said, Rule 6.8 is not limited to one round of post-hearing submissions. An arbitrator may schedule a second round, which is what the arbitrator said he did in this case on the interest issue. The arbitrator also found that the deadline-extension agreement concerned only the Interim Award. The May 22 email exchange about the extension, the arbitrator pointed out, "referred to the

'30-day award period' under Rule 7.1 as expiring '*if* the hearing is closed as of May 15,' when the initial post-hearing submissions were to be completed." (Emphasis sic.) Post-Hearing Order No. 1. This shows, said the arbitrator, that he did not declare the hearings closed as of May 15. Indeed, the arbitrator pointed out that the Interim Award expressly states, "This is an Interim Award only; it is not intended to be a Final Award. * * * The hearing remains open solely to address the interest issue." *Interim Award*, 34.

{¶ 16} AHLA Rule 4.1(a)(2) gives an arbitrator the power to "interpret the Rules to the extent that they relate to his or her powers or duties." Citing this rule, the trial court found that the arbitrator had the power to interpret the AHLA Rules and that his interpretation was reasonable. We agree. The parties gave the arbitrator the power to interpret AHLA Rules by agreeing to arbitrate under the AHLA's auspices. *Compare Piqua*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, at ¶ 35 (saying that the appellant gave the arbitrator the power to set the quantum of proof by agreeing to arbitrate under the AAA rules, which gave the arbitrator the power to do this). Even if the arbitrator's interpretation of the Rules were unreasonable, this would not be grounds to vacate. An unreasonable interpretation would show that the arbitrator "merely erred in *executing* his powers" not that he "*exceeded* his powers." (Emphasis sic.) *Id.* at ¶ 34.

{¶ 17} CareSource next argues that neither the Interim Award nor the Final Award is effective, because the arbitrator failed to comply with the filing requirement in AHLA Rule 1.2(a), which provides that the arbitrator "will transmit written messages and documents regarding a case through AHLA's Electronic Case Management System (ECM)." CareSource says that the arbitrator never transmitted either award through the

ECM. The court rejected this argument, pointing out that AHLA Rule 7.7[5] and R.C. 2711.08[6] require only that an award be in writing, signed by the arbitrator, and delivered to the parties, which, said the court, happened here. We agree that CareSource fails to show that transmitting an awards through the ECM is required for validity. Nothing in the AHLA Rules suggests that an award is invalid if it is not so filed.

{¶ 18} CareSource argues that the arbitrator also violated AHLA Rule 7.9 by using the Final Award to modify the Interim Award by adding prejudgment interest. Rule 7.9 provides that "[a]n arbitrator may not reconsider the merits of an award after it has been issued" but "may alter the award only to correct inadvertent mistakes." The trial court found that the arbitrator did not reconsider the merits of the Interim Award. The Final Award, said the court, incorporated the Interim Award without modification and added new determinations about prejudgment interest and costs. We agree.

{¶ 19} Lastly, CareSource argues that the trial court erred as a matter of law by saying that even if the Final Award were untimely, to vacate, CareSource must prove unequivocally that the arbitrator lost his jurisdiction by issuing a decision more than 30 days after closing the hearing and must show prejudice from the untimely award. Because we conclude that the trial court correctly determined that the Final Award was not inconsistent with the arbitrator's reasonable interpretation of the rules and procedure, we need not decide what would happen if it were not. We note, however that at oral argument CareSource took the position that upon their purported notice of termination of the

---

[5] "An award must be in writing and signed by the arbitrator, in compliance with applicable state and federal law." AHLA Rule 7.7.

[6] "The award made in an arbitration proceeding must be in writing and must be signed by a majority of the arbitrators. A true copy of such award without delay shall be delivered to each of the parties in interest. * * *" R.C. 2711.08.

arbitration, the entire proceeding must cease and start all over again in a new arbitration. Such a process would be antithetical to the concept of arbitration as efficient, economical and effective means of dispute resolution.

**{¶ 20}** The first assignment of error is overruled.

B. *The arbitrator's interpretation of the parties' agreements*

**{¶ 21}** CareSource argues in the second assignment of error that the arbitrator exceeded his powers by issuing awards that conflict with Article 4.7 and Article 7.6 of the 2005 Agreement and with Section 4.1 of the 1987 Agreement.

**{¶ 22}** Article 4.7 of the 2005 Agreement resembles a statute of limitations of sorts for payment errors. It requires reimbursement for payments made in error, but it says that "[i]n no event shall Hospital nor Payor go back more than two years from date of service to make any adjustments made to incorrect paid or denied claims." CareSource argues that this provision renders almost all of Kettering's claims untimely. The arbitrator rejected this argument. "This is an issue of contract construction," said the arbitrator, and under his construction, Section 4.7 "does not impose either a liability or damages time limit for these Arbitration claims." *Interim Award*, 28.

**{¶ 23}** Article 7.6 of the 2005 agreement is an integration clause: "This Agreement, Attachments, and Amendments hereto contain all the terms and conditions agreed upon by the parties and supersedes all other agreements, express or implied, regarding the subject matter hereof. Any amendments hereto and the terms contained therein shall supersede those of other parts of this Agreement in the event of a conflict." The arbitrator concluded that the 2005 Agreement did not supersede all provisions of the 1987 Agreement. Rather, the arbitrator concluded that except for the means of dispute

resolution in Section 4.1, the terms of the 1987 Agreement remain in effect to determine the merits of Kettering's underpayment claims arising under that agreement.

{¶ 24} CareSource contends that the arbitrator's interpretations conflict with our decision affirming the arbitrability of all Kettering's underpayment claims. CareSource asserts that we held that Article 7.6 is "an enforceable and unambiguous integration provision." CareSource is incorrect. The question before us was whether Article 7.6 meant that the underpayment claims arising under the 1987 Agreement were subject to the dispute resolution provision in Article 7.11 of the 2005 Agreement. We concluded that they were:

> [W]e conclude, as did the trial court, that Article 7.6 of the 2005 Agreement is reasonably susceptible to CareSource's interpretation that its effect is retroactive such that Article 7.11 of the 2005 Agreement supersedes the 1987 Agreement. * * * In other words, while KHN [Kettering] asserts that the subject matter of the 2005 Agreement encompasses "all claims arising on the effective date and into the future," Article 7.6 of the 2005 Agreement is susceptible to an interpretation that the subject matter of both agreements is the same, such that Article 7.11 of the 2005 Agreement supersedes the 1987 Agreement. Accordingly, as did the trial court, we resolve any doubt regarding the application of Article 7.11 of the 2005 Agreement in favor of arbitration.

*Kettering* at ¶ 39. On the question of arbitrability, then, the arbitrator's determination comports with ours. Article 7.11 of the 2005 Agreement, the dispute resolution provision, applies to the underpayment claims arising under the 1987 Agreement. But the arbitrator

found that the merits of these claims are determined under the terms of the 1987 Agreement. That is an issue we did not address, so we see no conflict.

{¶ 25} Section 4.1 of the 1987 Agreement refers to an informal grievance procedure to resolve disputes. CareSource argued that Kettering did not follow the procedure's requirements. But the arbitrator found that the grievance process was " 'ambiguous as to whether it creates a required process' because the requirements under Section 4.1 conflicted with the permissive language of the Grievance Procedure itself, and because it set deadlines for CareSource too." *Interim Award*, 27. The arbitrator said that it was CareSource's burden to prove noncompliance with Section 4.1 and that no evidence was presented on the parties' intent, scope, or mutual compliance with the process. So the arbitrator said that he could not conclude that the process was a condition precedent to Kettering's recovery or that Kettering failed to satisfy it.

{¶ 26} In response to each of the above agreement-interpretation arguments, the trial court determined that the arbitrator had acted within the scope of his power, and the court declined to revisit those the arbitrator's interpretations. The trial court is correct. The parties' gave the arbitrator the power to interpret and construe their agreements. An arbitrator does not exceed his powers when he interprets a contract incorrectly. *See Cedar Fair*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, at ¶ 6 (saying that "[a]n arbitrator's improper determination of the facts or misinterpretation of the contract does not provide a basis for reversal of an award by a reviewing court"). Indeed, " '[i]t is not enough * * * to show that the [arbitrator] committed an error—or even a serious error.' " *Id.*, quoting *Stolt-Nielsen, S.A. v. AnimalFeeds Internatl. Corp.,* 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). Rather, as the U.S. Supreme Court has said, in

determining whether the arbitrator exceeded his powers, "the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Oxford Health Plans LLC v. Sutter*, _U.S._, 133 S.Ct. 2064, 2071, 186 L.Ed.2d 113 (2013). If the arbitrator interpreted the contract incorrectly, well, that was part of the deal:

> All we say is that convincing a court of an arbitrator's error—even his grave error—is not enough. So long as the arbitrator was "arguably construing" the contract * * * a court may not correct his mistakes under § 10(a)(4) [authorizing a federal court to vacate an award when an arbitrator exceeds his powers]. The potential for those mistakes is the price of agreeing to arbitration.

*Id.* at 2070, quoting *Eastern Associated Coal Corp. v. Mine Workers,* 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000). Here, the arbitrator was interpreting the parties' agreements, which he had the power to do. So "[t]he arbitrator's construction holds, however good, bad, or ugly." *Oxford* at 2071.

{¶ 27} The second assignment of error is overruled.

## C. *The arbitrator's interpretation of Ohio law*

{¶ 28} CareSource argues in the third assignment of error that the arbitrator exceeded his powers by incorrectly interpreting Ohio course-of-performance law. The arbitrator concluded that "the parties' long-term payment history does not qualify as a course of performance that shows the parties' intent or alters their otherwise unambiguous payment terms." *Interim Award* at 25. "[F]or course of performance to apply," said the arbitrator, "Ohio law requires knowing acquiescence by [Kettering] of

CareSource's payment methodology." *Final Award* at 22. CareSource contends that the standard is not "knowing acquiescence" but constructive knowledge. It says that established law says that it is one party's constructive knowledge of the other party's manner of performance without objection that makes the performance part of the contract.

{¶ 29} The trial court declined to revisit this issue, concluding that the arbitrator decided it within the scope of his authority. The court pointed out that CareSource is not arguing that the arbitrator was without authority but that he made an error of law. The court also noted that the arbitrator fully considered the parties' arguments and thoroughly evaluated and discussed the relevant Ohio course-of-performance law before reaching his conclusion. The trial court got it right. "Courts * * * do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Southwest Ohio Regional Transit Authority v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 110, 742 N.E.2d 630 (2001). "It is because arbitration is a creature of private contract that courts must ignore errors of fact or law. Parties, by agreeing to allow an arbitrator to resolve their disputes, also implicitly agree to be bound by the mistakes the arbitrator makes while carrying out his charge." (Citations omitted.) *Piqua*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, at ¶18. " 'The arbitrators are the sole judges of the law and of the evidence and no vacation of an award will be had because of their misconstruction of the facts or of the law.' " *Id.*, quoting Comments, R.C. 2711.10. Here, the parties agreed that Ohio law governs the interpretation of their agreements. *See* 2005 Agreement, Article VII, 7.3; 1987 Agreement, Section VII, 7.7. And it was Ohio law that the arbitrator interpreted. It was within the arbitrator's power to interpret Ohio law, just like it was within his power to interpret the parties' agreements.

And like his interpretation of the agreement, his interpretation of the law does not concern us.

{¶ 30} The third assignment of error is overruled.

D. *Prejudgment-interest award*

{¶ 31} Lastly, CareSource argues in the fourth assignment of error that the arbitrator exceeded his powers by issuing the prejudgment interest award because the award conflicts with the parties' agreements and disregards Ohio's Prompt Pay Act.

{¶ 32} CareSource argues that the Prompt Pay Act exclusively governs Kettering's underpayment claims under both agreements. And the Act, CareSource says, exempts it from paying interest on Medicaid claims. The arbitrator disagreed, concluding after an analysis of the law that the Prompt Pay Act does not apply at all. CareSource also argued that the 1987 Agreement's interest provision does not allow an interest payment in this case and that the 2005 Agreement contains no interest provision at all. The arbitrator disagreed with CareSource's interpretation of the interest provision in the 1987 Agreement, and he used the provision to calculate the interest on the underpayment claims arising under that agreement. As to the 2005 Agreement claims, the arbitrator found that, while the 2005 Agreement does not contain an express interest provision, AHLA Rule 7.5 permits an arbitrator to award "any relief authorized by contract or applicable law that appears to be fair under the circumstances." The arbitrator found interest to be fair in this case and found that R.C. 1343.03 allows interest on contract claims, and he used this statute to calculate interest for the underpayment claims arising under the 2005 Agreement.

{¶ 33} The trial court found that the parties' agreements do not explicitly preclude the arbitrator from deciding the issue of prejudgment interest. So under AHLA Rule 7.5, said the court, the arbitrator had the authority to apply the law governing interest on the award. The court declined to review either Kettering's right to prejudgment interest or how the arbitrator calculated the interest, calling them questions of law and fact that were left in the arbitrator's discretion.

{¶ 34} The trial court is again correct. "[A]rbitrators have 'broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned' in the applicable contract." *Cedar Fair*, 140 Ohio St.3d 447, 2014-Ohio-3943, 19 N.E.3d 893, at ¶ 6, quoting *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati,* 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992). The evidence supports the trial court's finding that neither of the parties' agreements expressly precludes prejudgment interest. AHLA Rule 7.5 permits an arbitrator to award any relief authorized by law. The 2005 Agreements says that it is to be interpreted under Ohio law, and Ohio law authorizes prejudgment interest on contract claims. As we have already said, the arbitrator had the power to interpret the AHLA Rules, the parties' agreements, and Ohio law. An erroneous interpretation of any of these is simply not grounds for vacating the arbitrator's award.

{¶ 35} The fourth assignment of error is overruled.

### III. Conclusion

{¶ 36} We have overruled each of the assignments of error presented. The trial court's judgment is therefore affirmed.

. . . . . . . . . . . . .

FROELICH J., and TUCKER, J., concur.


Copies mailed to:

Gary J. Leppla
Philip J. Leppla
Jeffrey A. Lipps
Joel E. Sechler
Mark R. Chilson
Hon. Dennis J. Langer