[Cite as *Montgomery Cty. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 2021-Ohio-2052.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BOARD OF TRUSTEES, MIAMI TOWNSHIP, MONTGOMERY COUNTY, OHIO | : | |
| | : | |
| | : | Appellate Case No. 28996 |
| | : | |
| Plaintiffs-Appellants | : | Trial Court Case No. 2020-CV-2839 |
| | : | |
| v. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| FRATERNAL ORDER OF POLICE, | : | |
| OHIO LABOR COUNCIL, INC., et al. | : | |
| | | |
| Defendants-Appellees | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of June, 2021.

. . . . . . . . . . .

W. JOSEPH SCHOLLER, III, Atty. Reg. No. 0072764, ALEXANDER L. EWING, Atty. Reg. No. 0083934 and CHARLES B. GALVIN, Atty. Reg. No. 0091138, 9277 Centre Point Drive, Suite 300, West Chester, Ohio 45069
        Attorneys for Plaintiffs-Appellants

STEPHEN S. LAZARUS, Atty. Reg. No. 0041368 and ALEXANDER N. BECK, Atty. Reg. No. 0097008, 30 Garfield Place, Suite 915, Cincinnati, Ohio 45202
        Attorneys for Defendants-Appellees

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Plaintiff-appellant Miami Township Board of Trustees ("the Board") appeals from a judgment of the Montgomery County Court of Common Pleas, which denied its application to vacate an arbitrator's decision that reversed the employment termination imposed by the Board upon Douglas Hesler. The Board challenges the court's finding that the arbitrator did not exceed her authority under the terms of the collective bargaining agreement (CBA) executed by and between the Board and the police union. The Board also asserts that the arbitrator's order to reinstate Hesler violated public policy.

{¶ 2} Because we conclude that the arbitrator did not exceed her authority, we must conclude that the trial court did not err in denying the application to vacate. We further conclude the arbitrator's award did not violate public policy. Accordingly, the judgment of the common pleas court is affirmed.

## I. Facts and Procedural Background

{¶ 3} Hesler was hired as a police officer by the Miami Township Police Department in 2007.[1] On March 8, 2018, Hesler and another officer, Scott Miller, were summoned to a meeting with Captain John Magill. Magill informed the officers that they were the subject of an internal investigation and that they were entitled to union

---

[1] The facts relevant to this appeal are gleaned from the exhibits attached to the Board's application to vacate the arbitration award filed with the common pleas court on July 22, 2020. Those exhibits include the transcript of the arbitration hearing that is the subject of this appeal and, because this case involved matters which occurred during a prior arbitration involving Hesler, a transcript of that prior arbitration hearing and evidentiary documents relevant thereto were also attached to the application. These transcripts and evidentiary documents will be referred to by the exhibit numbers set forth in the application.

representation during the meeting. Hesler and Miller indicated they would represent one another in their official capacities as Vice-President and President, respectively, of the police union. As a result of that investigation, Hesler received a five-day suspension, which he appealed. The matter proceeded to arbitration. An arbitration hearing was conducted on February 13, 2019, following which the arbitrator affirmed the suspension.

{¶ 4} Of relevance to this appeal, during that February 2019 arbitration hearing, counsel for Hesler questioned Magill on cross-examination regarding an alleged statement made by Magill to Hesler. When Magill denied making the statement, counsel asked, "[w]ould you be surprised if we have it on a recording if you heard yourself say that?" Exh. D-9, p. 80. Magill replied by indicating such a recording would violate departmental policy.

{¶ 5} The recording policy to which Magill referred was set forth in Special Order Number 15-02, entitled "Workplace Recording Policy" ("the Recording Policy"), which provides in pertinent part as follows:

No employee or member of the Police Department for Miami Township, Ohio may record or attempt to record a conversation of any other employee or member of this department without the express knowledge and consent of all parties involved in the conversation.

* * *

This policy is not intended and should not be interpreted to interfere with the rights of employees to engage in any concerted activity that is protected under the National Labor Relations Act, or any other applicable laws or regulations.

{¶ 6} The day after that arbitration hearing, on February 14, 2019, Magill summoned Hesler to his office for an "informal meeting." Exh. C, p. 34. However, when Magill arrived for the meeting, Sergeant Julie Fiebig and Captain Charlie Stiegelmeyer were also present in Magill's office. Magill asked Hesler whether he had made a recording of the March 8, 2018 meeting. According to Magill, Hesler replied, "yes, I do, or yes, I did, I made an audio recording, I can't find them." Exh. C, p. 35. Magill then told Hesler to "stop" and told him to leave the office. Magill also told Hesler he had made an "error" if he had made a recording. *Id.* at p. 36. Magill indicated that he ended the meeting because there were "contractual guarantees and processes that we need to invoke and enact before we conduct internal investigations." *Id.*

{¶ 7} Magill immediately obtained permission to proceed with an internal investigation of the matter, and within 45 minutes of the "informal meeting," he summoned Hesler back to his office. Fiebig was still present at that time, and Hesler was provided written notice of the investigation. Hesler admitted that he had tried to make a recording, but he had later discovered that his recording device did not capture the conversations during that meeting.

{¶ 8} Because he believed that Hesler's statements during the first and second meetings were inconsistent and that Hesler was being untruthful, Magill recommended termination of Hesler's employment. A pre-disciplinary notice was provided to Hesler, and a pre-disciplinary conference was conducted on May 6, 2019. Hesler had union representation during the conference. Following the conference, the hearing officer concluded Hesler had violated the Recording Policy. The hearing officer also found a violation of General Order 1.2.10 Core Values and General Order 26.1.1 of the Code of

Conduct, both of which relate to honesty and truthfulness. Hesler's employment was terminated on May 20, 2019.

{¶ 9} Hesler appealed the termination in accordance with the terms of the collective bargaining agreement executed between the Board and the Miami Township Police Union, and the matter proceeded to arbitration. An arbitration hearing was conducted on November 13, 2019, at which the Board argued that Hesler's prior disciplinary history and the violation of the Recording Policy, coupled with Hesler's dishonesty when questioned about the recording, constituted just cause for termination.[2] The Union argued that Hesler was terminated without just cause and that there were procedural violations associated with the termination. The Union asked that Hesler be reinstated and made whole.

{¶ 10} Testimony adduced during the 2019 arbitration hearing included Magill's above-cited testimony setting forth the two meetings he had with Hesler on February 14, 2019. Magill also testified that Hesler admitted he knew it was a violation of policy to make the recording. A memo executed by Magill to memorialize the incident was introduced into the arbitration record. In that memo, Magill indicated that when he later summoned Hesler back to his office to continue the investigation into the recording, Hesler stated he had set his cell phone to record the March 8 meeting but "after the meeting he found that there was no recording or he could not find the recording on his phone." Exh. D-11.

{¶ 11} Stiegelmeyer testified that he was present when Magill first summoned

---

[2] In addition to the 5-day suspension in 2018, Hesler was suspended in 2016 for one and one-half days.

Hesler to his office regarding the recording issue. According to Stiegelmeyer, when Magill asked him if he had recorded the March meeting, Hesler responded affirmatively and also indicated he did not know where "they" were. Exh. C, p. 69. Hesler also admitted he was aware the recording violated department policy. According to a memo prepared by Stiegelmeyer regarding the incident and introduced during the hearing, Hesler stated he did not know "where he put the recordings." Exh. D-26. Stiegelmeyer noted Magill stopped the interview at that point.

{¶ 12} A memo executed by Fiebig was also introduced into the hearing. It indicated that Hesler, when asked about the recording, stated, "yes there are recordings but I don't have them." Exh. D-12. The memo further noted that when Hesler returned to Magill's office, he stated he had set his cell phone to record, but it did not work properly. *Id.*

{¶ 13} During his testimony, Hesler did not dispute that he attempted to record the March 8, 2018 meeting. However, Hesler testified that he was not only representing Miller during that meeting but was also appearing on behalf of other union members who had complaints regarding a supervisor. He claimed his representation of the other officers constituted concerted activity because it was an investigatory meeting. Hesler testified that when he was called into Magill's office and was asked about the existence of a recording, he admitted that he had tried to record the meeting. He testified that Magill then became angry and told him to leave the office. Hesler testified that he knew his phone had failed to make a recording, but before he could explain, Magill ended the meeting and Hesler's attempt to explain was "cut off." Exh. C, p. 116.

{¶ 14} Following the hearing, the arbitrator determined that the Board lacked just

cause to terminate Hesler's employment and ordered that he be reinstated with full benefits. In doing so, the arbitrator found Hesler's conduct was protected by the exception clause contained within the Recording Policy. In her decision, the arbitrator stated:

[Hesler] contended that he believed recording the meeting was not a violation as he was engaged in concerted activity protected by the National Labor Relations Act (NLRA). The Union argues in its post hearing brief * * * that the Workplace Recording Policy specifically exempts Union Activity from its prohibition on workplace recordings. Further, since [Hesler] attempted to make the recording while acting in his Union capacity, it was concerted activity and thus permissible under the express terms of the policy.

The Employer argues * * * that the NLRA does not apply to this Employer because it "expressly" does not apply to state and local governmental employers (29 U.S.C Sec 152(2)). Additionally, the Employer contends that the reference to "other applicable laws and regulations" cannot be cause to read into the Workplace Recording Policy a right of police officers to create unauthorized workplace recordings. Further, that the State Employment Relations Board (SERB) is the governing body pursuant to Ohio Revised Code 4117, the prevailing statute, and that SERB has not found this right to exist.

It is not known if discussions occurred between the Union and the Employer regarding the Workplace Recording Policy, and if so, if there was

any meeting of the minds between the parties on the language ultimately included within the policy, although it appears that the Grievant had been involved in the development of the policy. Additionally, the arbitrator is not aware of any training of the employees on this policy, and particularly the provision of the policy in question here. However, it is evident to this arbitrator, that there appears to be confusion, on both sides, about the intent, meaning, and/or application of [the exception clause set forth in] the Workplace Recording Policy.

This arbitrator does find it beyond the pale that managers engaged in drafting a policy in the public sector would not be aware that SERB, not the NLRB, would have jurisdiction with regard to the lawful conduct of employees engaged in concerted activity; particularly in the year 2016, when the policy was adopted, as by that time, Ohio's collective bargaining law (ORC 4117) had been in effect for thirty-two years.

Why "National Labor Relations Act" verbiage was included in the policy was not explained through evidence or testimony. However, it has been common practice for SERB to look to established NLRB case law for guidance, as far back as the enactment of ORC 4117 in 1984. The National Labor Relations Board (NLRB) has a long history of upholding an employee's right to record meetings, overtly or covertly, where those employees are deemed to be engaged in concerted activity pursuant to NLRA Sections 7 and 8(a)(1) and thus, protected.

Of critical importance is the fact that the end phrase contained in the

language of [the exclusion provision], "*or any other applicable laws or regulations*" has been ignored in this case, and it cannot be. It is the opinion of this Arbitrator that the phrase would automatically encompass ORC 4117 as an "applicable law." Therefore, the public employee rights set forth under ORC 4117.03 would be applicable in this instance. Specifically, section (A)(2):

> (A) Public employees have the right to:
>
> * * *
>
> (2) Engage in concerted activities for the purpose of collective bargaining or other mutual aid and protection.

The Employer's argument that SERB has not rendered a specific ruling that "workplace recording policies are inherently violative of a police officer's Chapter 4117 rights" cannot be construed to negate the clear language of ORC 4117.03.

The NLRB and the U.S. Supreme Court (*NLRB v. J. Weingarten, Inc.,* 420 U.S. 251 (1975), 73-1363, SCOTUS) and SERB (*Davenport,* SERB 95-023, (12-29-95)), have all held that employees have a right to engage in concerted activities for mutual aid and protection and have the right to union representation at investigatory interviews. In *Davenport,* SERB held as follows:

> We believe that *Weingarten* provides the proper balance between the public employer's need to manage and the public employees' rights in O.R.C. Section 4117.03(A)(2) to engage in concerted

activities for mutual aid and protection. Therefore, we specifically find that, upon an employee's request, representation by an employee organization is required at investigatory interviews which the employee reasonably believes could lead to discipline (the *Weingarten* standard) and at grievance meetings. One can only surmise that the reference to the National Labor Relations Act in the policy may have been an effort to address "*Weingarten*" rights.

* * *

In this arbitration case, it is clear from both [Hesler's] testimony and the testimony of Magill, that [Hesler] was not only the subject of an internal investigation, but was in fact engaged in protected concerted activity at the investigatory meeting of March 8, 2018. [Hesler] testified that he and Officer Scott Miller, President of the Union, were not only engaged in concerted activity on behalf of each other, but he believed he was also there in an effort to provide mutual aid and protection for a group of employees who had a problem with a particular supervisor. Whether any other group of employees were at issue is irrelevant, as in their respective positions with the Union, President and Vice President, if it was the two of them being investigated, it stands to reason that they would have been representing each other and thereby engaged in protected concerted activity.

Magill was clear in his testimony that the March 8, 2018 meeting was an internal complaint investigation and that Officer Hesler and Officer Miller were representing each other.

Clearly, the March 8, 2018 meeting was an "investigatory" meeting, [Hesler] and the Union President were the subjects of the investigation; therefore, it was reasonable to believe disciplinary action could result and each was entitled to Union representation, which is a protected activity.

It should be abundantly clear to any reasonable person that the caveat contained in the Workplace Recording Policy would have no reason to be there other than to provide an exception in order to protect an employee or the union in the event they feel a need to record a meeting while engaging in concerted activity. The exception being clearly stated as: "*This policy is not intended and should not be interpreted to interfere with the rights of employers to engage in any concerted activity that is protected under. . . any other applicable laws or regulations.*"

This arbitrator finds that [Hesler] was, in fact, engaged in concerted, protected activity as the meeting of March 8, 2018, and that his attempted recording was therefore *not* a violation of the Employer's Special Order 15-02 (Workplace Recording Policy).

(Emphasis sic.) Exh. A.

{¶ 15} The Board filed an application to vacate the arbitrator's award with the Montgomery County Court of Common Pleas. The Union filed a motion to confirm the award. After a hearing on the issue, the common pleas court found the arbitrator's award was appropriate and denied the application to vacate. This appeal follows.

## II.    Scope of Review

**{¶ 16}** This court has previously discussed the narrow scope of review of arbitration matters in *Wright State Univ. v. Fraternal Order of Police*, 2d Dist. Greene No. 2016-CA-35, 2017-Ohio-854, wherein we stated:

"Public policy favors arbitration." *Cincinnati v. Queen City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, ¶ 14 (1st Dist.), quoting *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 742 N.E.2d 630 (2001). "Arbitration 'provides the parties with a relatively speedy and inexpensive method of conflict resolution and has the additional advantage of unburdening crowded court dockets.' " *Cleveland v. Cleveland Police Patrolmen's Assn.*, 2016-Ohio-702, 47 N.E.3d 904, ¶ 21 (8th Dist.), * * *, quoting *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83, 488 N.E.2d 872 (1986).

"Judicial review of arbitration awards is limited in order to encourage parties to resolve their disputes in arbitration." *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 16 (2d Dist.). The vacation of an arbitrator's award is permitted when the court finds that one of the conditions set forth in R.C. 2711.10 exists. *Id.* at ¶ 19. Pursuant to R.C. 2711.10(D), the court of common pleas may vacate an award if it finds that the arbitrator exceeded his or her powers. In order to determine whether an arbitrator has exceeded his or her authority, a court must look to whether the award "draws its essence" from the CBA. *Queen*

*City Lodge No. 69, Fraternal Order of Police*, 164 Ohio App.3d 408, 2005-Ohio-6225, 842 N.E.2d 588, ¶ 17 (1st Dist.). An award satisfies this requirement when there is a rational nexus between the CBA and the award. *Id*. at ¶ 18.

Further, "[t]he comments to R.C. 2711.10, the statute governing judicial vacation [of arbitration awards,] explain, [that] '[t]he arbitrators are the sole judges of the law and of the evidence[,] and no vacation of an award will be had because of their misconstruction of the facts or of the law." *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496, 2009-Ohio-6591, 924 N.E.2d 876, ¶ 18 (2d Dist.). "It is because arbitration is a creature of private contract that courts must ignore errors of fact or law." *Id.* "Critically then, in reviewing an arbitrator's award, the court must distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate; the latter is not." *Id.*

*Wright State* at ¶ 11-13.

### III.    Analysis

{¶ 17} The sole assignment of error asserted by the Board states:

THE TRIAL COURT ERRED BY CONFIRMING AND REFUSING TO VACATE THE ARBITRATION AWARD.

{¶ 18} The Board asserts that the common pleas court erred by denying its request to vacate the arbitration award.

**{¶ 19}** The Board first claims the arbitrator exceeded her authority because her award did not draw its essence from the CBA. Specifically, the Board claims the arbitrator deviated from her sole duty to determine whether Hesler was terminated for just cause by focusing "nearly entirely on whether Ohio law protected Hesler's conduct as concerted activity, which is not settled law in Ohio."

**{¶ 20}** We find this argument somewhat disingenuous. In order to make a determination of whether Hesler was terminated for just cause, the arbitrator first had to determine whether he actually violated the Recording Policy. The language of the Recording Policy indicates the parties did not intend to create a blanket prohibition barring all recordings and that they anticipated the necessity of exceptions to the prohibition. Thus, the express language of the Recording Policy made it necessary for the arbitrator to determine whether the NLRA or "any other applicable law" would mandate an exception to the prohibition on recording in the workplace.

**{¶ 21}** Based upon the Recording Policy language, the arbitrator looked to R.C. Chapter 4117, which governs public sector collective bargaining in Ohio. She specifically noted that R.C. 4117.03, which governs the rights of public employees, provides that in addition to forming, joining, assisting and participating in any employee organization of their own choosing, public employees also have the right to "[e]ngage in other concerted activities for the purpose of collective bargaining or other mutual aid and protection[.]" R.C. 4117.03(A)(1) and (2). The arbitrator also noted that R.C. Chapter 4117 does not explicitly permit recordings of concerted activity. Further, neither the Ohio courts nor SERB have set forth any guidance on whether recording concerted activity is permitted.

{¶ 22} However, the arbitrator correctly noted that precedent established by the NLRB, while not binding upon actions involving public employees in Ohio, does serve to provide guidance in the interpretation of comparable statutory provisions. Further, the NLRA, which contains language similar to R.C. 4117.03, has been held to protect the right to record when an employee is engaged in concerted activity or is acting in concert for their mutual aid and protection.[3] *See Whole Foods Mkt. Group, Inc. v. Natl. Labor Relations Bd.*, 691 Fed.Appx. 49, 51 (2d Cir.2017). *Accord ADT, LLC*, 369 N.L.R.B. No. 23, 2020 L.L.R.M. (BNA) 40724, 2020 WL 591740. Indeed, under NLRA guidelines, Hesler's actions in recording the meeting were protected because he was engaged in concerted activity in that he was acting in his capacity as Union Vice-President to represent Miller in an investigatory interview that could have resulted in the imposition of discipline against Miller. *See ATT Mobility, LLC and Marcus Davis*, 370 N.L.R.B. No. 121, 202 L.L.R.M. (BNA) 162892, 2021 WL 1815083. Based upon this analysis, the arbitrator determined Hesler's actions were protected under the terms of R.C. 4117.03.

{¶ 23} On this record, we conclude that the Board's claim that the arbitrator exceeded her authority lacks merit. The Board cannot, and did not, demonstrate that the arbitrator modified the broad language of the Recording Policy because, under the presented circumstances, the arbitrator had to determine the meaning and applicability of the "any other applicable law" language. Further, a review of the record and the arbitrator's reasoning set forth above confirms that the award had a rational nexus to the Recording Policy. However, even if the arbitrator misconstrued R.C. 4117.03, which is

---

[3] Like R.C. 4117.03, the NLRA provides that "[e]mployees shall have the right * * * to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *." 29 U.S.C.157.

the core argument made by the Board, we would have no basis for vacating the award as a mistake of law does not nullify an arbitration award. Thus, we find this argument lacks merit.

{¶ 24} Further, regardless of whether the NLRA generally applies to public employees, the language used in the Recording Policy, on its face, indicated that the parties had specifically agreed the policy would not affect any concerted activity protected under that Act. In other words, the parties agreed that as to the sole issue of workplace recordings, they would be bound by both the NLRA as well as any other applicable laws permitting workplace recordings. We cannot find, and the Board fails to cite, any authority that would indicate that public employers and employees cannot agree to be bound by various provisions of the NLRA. The Board cannot now argue it is not bound by a contract term to which it expressly agreed. And, as set out above, the NLRA permits the recording of concerted activity.[4]

{¶ 25} The Board next contends that the arbitrator ignored the contradictions made by Hesler during the two meetings regarding the recordings, and thus, erred in determining that Hesler was "not untruthful in violation of General Order 26.1.1 or 1.2.10." We disagree.

{¶ 26} The arbitrator's decision expressly noted the statements and testimony of Magill, Stiegelmeyer and Fiebig. She also noted Hesler's testimony recounting the meetings. The arbitrator stated she found relevant that "[t]here is no dispute that [Hesler] was not afforded full opportunity to expound upon his statement as to the existence of

---

[4] The Board does not dispute that Hesler's representation of Miller constituted concerted activity.

any audio recording at the first interview on February 14, 2019. The testimonies of both [Hesler] and Magill support that the first interview ended right after [Hesler] responded to Magill's question with just a single statement." Exh. A., p. 26-27. The arbitrator concluded that, given the circumstances, Hesler's statements were not "inordinately inconsistent; particularly in light of the brevity of the first interview and the circumstances by which it occurred, which will be addressed later."[5] *Id.* at p. 27. The arbitrator found the evidence did not support a finding that Hesler had been untruthful when responding to Magill's questioning about the recording.

{¶ 27} The arbitrator's decision finding the evidence did not support a finding of dishonesty was a factual conclusion based upon the evidence presented to her and a determination of witness credibility. Even if we disagreed with this finding, which we do not, we would not have the authority to reverse based upon an erroneous finding of fact.

{¶ 28} The Board next contends that the common pleas court was required to vacate the arbitration award because the reinstatement of Hesler violated Ohio public policy, which mandates that police officers be held to a higher standard of conduct than the general public, especially regarding issues of honesty. In conjunction, the Board also contends that the arbitrator should have considered the fact that Hesler's termination was the culmination of progressive discipline when viewed in the context of his prior

---

[5] The arbitrator's decision indicates that she found "the initial questioning of [Hesler] on February 14, 2019, was investigative questioning, or constituted an investigatory interview, and as such [Hesler] should have been advised of the nature of the investigation and whether he was the focus or a witness prior to such questioning so that he could determine if he wanted to seek Union representation. The arbitrator recognizes that Magill quickly ended the first investigatory interview because he recognized that 'contractual guarantees' and 'processes' need to be invoked, but the harsh reality is that those contractual guarantees and processes should have been invoked *before* the first question about an audio recording was asked of [Hesler]." Exh. A, p. 32-33.

disciplinary actions.

**{¶ 29}** "The Ohio Supreme Court has recognized that, if an arbitrator's interpretation of a CBA violates public policy, the resulting award is unenforceable." (Citations omitted.) *Fraternal Order of Police Lodge 8 v. Cleveland*, 8th Dist. Cuyahoga No. 102565, 2015-Ohio-4188, ¶ 25.   The issue is not whether the officer's conduct violated some public policy, but whether the arbitrator's reinstatement order did so. *Dayton v. AFSCME, Ohio Council 8*, 2d Dist. Montgomery No. 21092, 2005-Ohio-6392, ¶ 23.   "A court may refuse to enforce an [arbitration] award when specific terms in the contract would violate public policy, but there is no broad power to set aside an arbitration award as against public policy."   *Id.* at ¶ 23, quoting *Board of County Commrs. v. L Robert Kimball and Assocs.*, 860 F.2d 683, 686 (6th Cir.1988).

**{¶ 30}** As stated above, the arbitrator made a factual finding that there was no evidence to support a finding that Hesler was dishonest.   We agree with that finding. Thus, any issues of public policy relating to Hesler's honesty have no bearing on this case.

**{¶ 31}** As to the claim regarding progressive discipline, we note that the arbitrator considered and rejected the argument.   In her decision, the arbitrator stated:

> The case that the [Board] attempted to make throughout the proceedings in this instant arbitration is that it terminated [Hesler] for policy violations and for dishonesty.   The [Board] in its opening statement emphasized its feeling that in the two prior situations that resulted in suspensions, one (1) day and five (5) day[s], it had been quite benevolent towards [Hesler] considering the circumstances for which he was

disciplined. In its Post Hearing Brief the [Board] stated that [Hesler's] time with the department is "riddled" with instances of inappropriate conduct citing the two instances from 2016 and 2018 for which [Hestler] served the aforementioned suspensions.

It appears that the [Board] loosely uses the terms like "numerous" and "riddled" and "throughout his career" to convince whomever they stand before that [Hesler] has consistently been a poor employee for his entire tenure as an officer with the Miami Township Police Department.

[Hesler] has been with the Department for approximately twelve (12) years and it is apparent to this arbitrator that if [Hesler's] history was "riddled" with inappropriate conduct there would have been more instances of disciplinary action that would still be on the record. This is particularly evident in light of the stringent language in Article 10, Personnel Files, of the CBA, including the language that allows prior discipline to be considered beyond the threshold time frames, if there has been intervening discipline[.]

Exh. A.

{¶ 32} The arbitrator went on to reject the claim that Hesler's record was riddled with problems. She further stated that, since she had determined the evidence did not support the claim of misconduct in the case before her, "termination of employment is not for just cause * * *." Exh. A.

{¶ 33} We agree. Since the evidence in this record does not support Hesler's termination for dishonesty, we cannot ascertain how claims regarding progressive discipline nor public policy would lead us to ignore that evidence and vacate the arbitration

award.

{¶ 34} Finally, the Board contends the arbitrator erred by failing to consider evidence Hesler had filed an unfair labor practice claim with SERB relating to his termination. In that action, Hesler alleged the Board violated R.C. 4117.11 by terminating him in retaliation for engaging in union activity. SERB dismissed the action, finding the Board did not violate the statute. Thus, the Board argues the arbitrator's decision is in conflict with the SERB decision.

{¶ 35} The arbitrator did take notice of the above claim and dismissal. However, she gave it little credit because the Board did not present evidence of the claim and its disposition until after the arbitration hearing.[6] Further, the evidence presented by the Board consisted solely of Hesler's charging document, the Board's response and the decision dismissing the claim. None of the evidence presented in that action is a part of the evidence in this record. Moreover, the order dismissing the action was summary in nature, and, thus, did not provide information as to the evidence considered. Finally, that action involved a finding of whether the Board violated R.C. 4117.11, while this arbitration involved the question of whether R.C. 4117.03 permitted recording in an investigatory meeting. Based upon this record, we cannot conclude that the arbitrator erred in finding that the SERB decision was not dispositive of the issues presented in the arbitration.

{¶ 36} After reviewing the voluminous record, we conclude the decision of the arbitrator was rationally related to the Recording Policy and, as such, the arbitrator did not exceed her authority. Accordingly, the Board's sole assignment of error is overruled.

---

[6] The information was contained in the Board's post-hearing brief.

# IV. Conclusion

{¶ 37} The Board's assignment of error being overruled, the judgment of the common pleas court denying the motion to vacate the arbitrator's award is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

W. Joseph Scholler, III
Alexander L. Ewing
Charles B. Galvin
Stephen S. Lazarus
Alexander N. Beck
Hon. Timothy N. O'Connell